PETROLEUM PRODUCERS CO. et al. v. STOLLEY et al.

No. 10733.

Court of Civil Appeals of Texas. San Antonio.

Dec. 13, 1939.

Rehearing Denied March 6, 1940.

E. G. Lloyd, Jr., of Alice, Linebaugh & Guittard, of Victoria, and Kilgore & Rogers, of Wichita Falls, for appellants.

·Gerald C. Mann, James Noel, Polk Shelton, and Henry H. Brooks, all of Austin, for appellees.

SMITH, Chief Justice.

The property involved in this suit consists of a strip of land three miles long and fifty-one varas wide at one end and fifty-six at the other, comprising fifty-six acres, in Duval County.

Appellees contend, while appellants deny, that the disputed strip is vacant public land lying between the Alexander League (survey 102) on the north, and surveys 78, 211, 212 and 215 on the south. Survey 102 is the senior survey, and 78, 211, 212 and 215, the junior.

The Commissioner of the General Land Office had leased the strip to R. R. Stolley for oil and gas purposes, and Stolley, joined later by the State, brought this suit in trespass to try title to establish the claimed vacancy and sustain his lease from the State.

J. B. Wood and the heirs of James F. Welder, claiming the fee in the land, and their lessees, Petroleum Producers Company and United Producers Company, were named as defendants below.

A jury trial resulted in judgment in favor of the plaintiffs below, and the defendants have appealed. The parties will be herein referred to as plaintiffs and defendants, respectively, as in the trial court.

The Alexander League, or survey 102, was located in the year 1878, by John J. Dix, then County Surveyor of Duval County, "based on actual ground work done in the field during November, 1875, as reflected by his field notes."

On the other hand, the mentioned surveys on the south, 78, 211, 212 and 215, were located two years later, in 1880, by A. M. French, through office surveys within a traverse made on the ground by him. At the times of both senior and junior surveys, Dix and French were partners in their professional work. Both partners died prior to the trial of this cause and therefore neither could testify threat.

The controlling question in the case was made to turn below on the issue of whether Dix marked the southwest corner of survey 102 with a stake and mound at the time he located that survey, as evidenced by his field notes returned on October 8, 1878. The jury answered that issue in the negative.

Both parties in their oral argument in this court contended that under the evidence the issue is one of law rather than of fact, plaintiffs, upon whom the burden rested to negative the issue, claiming that the evidence was conclusive that Dix did not so mark that corner, while defendants contend with equal vigor that there was no evidence, or at least insufficient evidence, to sustain the adverse finding. The vital question calls for a minute and exhaustive study of the somewhat complicated evidence covering nearly 700 pages of the record.

It is conceded by all the parties that an excess exists in the Alexander League, regardless of whether the disputed strip is excluded from or included within the grant, and therefore the matter of acreage can have no bearing upon this appeal.

Plaintiffs contend that the disputed strip comprises a vacancy between the Alexander League on the north and surveys 78, 211, 212 and 215 on the south, while defendants contend that the strip lies within the League and is included in the grant thereof—that the south boundary of the League coincides with the north boundary of 78, 211, 212 and 215. If surveyor John J. Dix placed a stake and mound, as the southwest corner of the League in 1878, at the point claimed by defendants, but denied by plaintiffs and negatived by the jury finding, then under the theory of both plaintiffs and defendants, and adopted by the trial court, the claimed vacancy does not exist, and plaintiffs have no cause of action; otherwise, they have.

It is impossible in this opinion to undertake an analysis of all the evidence upon this issue, and yet to attempt even a summary of any part of it would require a summary of all of it, for all of it presents a composite mass from which no part may be fairly segregated and separately considered, because all are related and each has some bearing on the ultimate issue.

We may say, generally, however, that the evidence upon the issue submitted to the jury consists of literally hundreds of elements. There is no direct evidence, other than that gleaned from his field notes, which the jury impliedly found were made from an office survey; that John J. Dix, in 1878, placed the stake and mound at the point claimed by plaintiffs, and rejected by the jury. The nearest approach to direct evidence was made by Hayes Dix, son of John J. Dix, and himself a surveyor. Hayes Dix testified that he accompanied his father when, in 1899, the latter was called upon to identify the southwest corner of the Alexander League in order to fix the beginning point of a line for a fence; that although the alleged stake and mound marking that

corner was located far out in an open pasture of cactus and huisache, his father went straight to those markings, locating them without difficulty, and pointed them out to the witness as the markings he had placed there in 1878, twenty-one years before, as the southwest corner of the League. The witness further testified that in the course of his work as a surveyor he had had occasion to return to that point in 1908, 1914 and 1925, and each time observed the same markings at the same place indicated to him by his father in 1899, and that those markings, although disturbed, are still there in the same location. This evidence supports defendants' theory, and, if true, expressly and by necessary implication destroys plaintiffs' case. Plaintiffs do not attempt to impeach that testimony, except in degree, in that they contend, only, that the stone mound was placed on the ground by French in 1880, and (1) that French's "X" tree witnesses the present location of the mound; or in the alternative (2) that the mound was placed by French at the point witnessed by his "X" tree, and subsequently moved 51 feet west and 6 feet north to its present location.

Plaintiffs undertook to destroy the effect of, and defendants to bolster, that testimony of Hayes Dix, which was sufficient to establish the corner in question at the point insisted upon by defendants, and which, if given full probative effect, would defeat the plaintiffs' suit. The record, however, presents a great mass of additional evidence, parol and documentary, direct and hearsay; opinion, argumentative, expert, technical, practical; conclusions, assumptions, presumptions, inflections, implications. Numerous surveyors of long practical experience in that and like sections of the State, testified at length upon the issue under scrutiny here. They analyzed the territory and terrain, and applied their knowledge and experience to the issue. They testified to the engineering habits and peculiarities of Dix and French, respectively, their methods of surveying and markings, as well as to the customs of surveyors generally in that section. They sought to follow in theory the footsteps of Dix and French, and to explain, distinguish, question, reject or justify the diverse lines and markings of those original surveyors, respectively. When all that evidence is shuffled and sifted, examined and re-examined, and its separate and diverse parts weighed and considered, it discloses two conflicting theories of fact, the one supporting and the other refuting the contention of defendants that Surveyor John J. Dix, on or before October 8, 1878, marked the southwest corner of the Alexander League with a stake and mound, admitted to be the controlling issue of fact in the case. The jury found against that contention. Frankly, this court cannot say that, upon the bald record, we would have found as the jury did. But that is not the test to be applied upon this appeal. The true test is that made by the jury, upon first hand evidence, adduced before them from living witnesses whose credibility, and the weight to be given their testimony, was determinable by the jury, with the approval of the trial judge. The jury and the trial judge have thus resolved the issue, from a material conflict in the evidence, and that settles the case so far as that issue of fact affects it. We overrule defendants' first and second propositions in which this aspect of the case is presented.

Defendants' third proposition is best stated by quoting it:

"The statement of the attorney for plaintiff Stolley, the vacancy claimant, in the closing argument to the jury,

"'I proved by Mr. Jim Wood (defendant owning part of the fee)—I think we get along all right—if we win this suit he is going to have more wells than if we lose it. If he loses it he will have less wells than if we win it. They talk about getting the oil. We think that belongs to the state. If that belongs to the state it is not the Welder heirs' (defendants owning the remainder of the fee) oil. The state is entitled to its oil like the Welder heirs are entitled to their oil. Mr. Kilgore's clients, the oil companies, may have to spend money offsetting our wells there. We are not hurting the Welders because the oil companies will have to offset it. Thereby they will get more wells by losing the suit than they will by winning it.'—by importuning and inviting the jury to consider matters not in evidence, with reference to drilling such offset wells, and by improperly informing the jury of the effect of their answer to the special issue propounded, and by improperly arguing matters of law, aroused and invoked sympathy for the landowning defendants, and prejudice against the oil company defendants, by persuading the jury that an adverse verdict would not hurt but would help the Welder heirs, and would hurt only the oil companies. Hence the trial court erred in refusing defendants' motion for new

trial, complaining of such improper argument."

Plaintiffs' counter proposition is that "the argument complained of by defendants' third proposition represents a fair inference to be drawn from the evidence, and was not reversible error."

■ The effect of the argument objected to was that the individual defendants would "get more wells" by losing the suit than by winning it, in that if they lost it the disputed strip would be drilled, thereby forcing their lessees, the corporate defendants, to expend money and drill wells on defendants' adjoining Alexander League in offset of the wells to be drilled on the strip; that an adverse verdict would not hurt the individual defendants, "because the oil companies would then have to spend money offsetting the" individual defendants' land. The argument was an adroit appeal to the jury to return a verdict which would give the strip to the State and the individual plaintiff, without injuring, but inuring to the benefit of, the individual defendants, thereby placing the whole loss on the two defendant oil corporations. It was, in our opinion, improper argument, presumably harmful to the defendants, and therefore requiring reversal unless, as plaintiffs contend, it was a proper deduction from the evidence, or was waived by defendants' failure to timely object to it and by inviting it by adducing related testimony.

■ The record shows that defendants did not object to the argument at the time it was made, or until defendants included it in an amended motion for new trial. The record further shows that wells have been drilled on adjoining lands, within 330 feet on each side of the disputed strip. Defendants themselves elicited testimony from one of the individual defendants that even though the drilling of the strip would force offset wells on his property, he would not "want that strip through his pasture." We are of the opinion that the argument, if not warranted by the record, was of such nature that any instruction to the jury thereon by the trial judge would have had the effect of stressing, rather than of eradicating it from the minds of the jury, and that defendants were thereby relieved from the usual duty of objecting to it at the time it was made. But we are of the further opinion that the evidence stated—particularly defendants' voluntary statement to the jury, that he would not want the strip of

vacancy through his pasture even though its segregation would result in the drilling of more wells on his land—warranted counsel in speculating as he did upon that phase of the case. Our conclusion is, then, that defendants' third proposition does not present reversible error.

■ Plaintiff Stolley's claim rested upon his lease from the State, which owned the fee in the strip. That lease contained the usual conditions subjecting the leasehold interest to forfeiture unless Stolley paid the annual rentals provided for in lieu of development, or developed the lease by way of offset wells to prevent drainage. Defendants urge in their fourteenth proposition that Stolley failed to prove he had complied with those conditions in avoidance of forfeiture and therefore failed to establish his case. We overrule the proposition. The vacancy having been established, the State holds the fee, Stolley being a mere lessee under the State and subject to its ownership of the fee. We are of the opinion that in the absence of any sort of affirmative showing to the contrary, we must presume that the lessee is performing his obligations under the lease according to law. But, if the lessee has defaulted in any condition of the lease, the State, only, may complain; defendants, owning no interest in the property, certainly cannot complain. The fact that the State has joined its lessee in prosecuting the suit precludes any presumption that the lessee has forfeited his leasehold interest, and the lessee is entitled to recover along with the lessor.

■ In their fourth and fifth propositions defendants complain of the failure of the trial judge to direct a verdict for defendants. We overrule the proposition on the ground that the case was one for the jury.

In their sixth, seventh and eighth propositions defendants question the sufficiency of the evidence to support the verdict, and insist that verdict should have been rendered in their favor. Those contentions have already been disposed of in effect, and by implication, and the propositions will be overruled.

■ Defendants contend in their ninth proposition that the trial court erred in excluding from evidence a certified copy of the judgment roll in a cause previously tried and disposed of finally in the Dis-

trict Court of Duval County to which none of the parties in this case were parties. Defendants contend that the judgment of the District Court in that case is stare decisis of the issue of vacancy in this case. We overrule the proposition for the reason that the parties and subject matters of the two cases are not identical, and that the judgment in the former case can be given no binding effect upon the decision of this case.

In their tenth proposition defendants complain of the admission of the testimony of the witness Dellis to the effect that in his opinion as an expert the southeast corner of survey 102 was not marked on the ground and was a mere office call. There was, and we think could be, no objection to the qualification of the witness to give an opinion in that matter, and, being qualified, we think it was proper for him to state from the facts and circumstances in evidence, and put to him in a hypothetical question, that in his opinion the corner in question was not marked on the ground, but was a mere office call. Moreover, the testimony objected to was in response to like testimony adduced by defendants. We overrule the proposition.

Defendants complain of the admission in evidence of the field notes of John J. Dix to a resurvey of survey 220, adjoining survey 102 on the east. We think the evidence was admissible, if for no other reason, for what, if anything, it might be worth, to show the characteristics, as well as the accuracy of the work, of the surveyor, which was under consideration in the case. In any event, however, even if erroneously admitted, it was harmless and not of such nature as to warrant reversal. This question is raised in defendants' eleventh proposition, which is overruled. Without discussing them, we also overrule defendants' propositions twelve and thirteen, as being without merit.

The trial court instructed the jury to answer the special issue "wholly upon the evidence admitted by the court in your presence, and not upon any consideration of any facts or circumstances whatsoever which may be known to you or which may have been learned by you from any source whatsoever other than the evidence admitted by the court." Defendants complain of this instruction in their fifteenth proposition on the ground that it prohibited the jury from considering matters of common knowledge in arriving at a finding upon the issue. And in their sixteenth proposition defendants, as an alternative, complain of the refusal of the court to instruct the jury that they could consider matters of common knowledge in determining the issue. In our opinion neither proposition presents reversible error. We think it is settled law that it would have been error had the court affirmatively advised the jury that they could consider matters of common knowledge, or to affirmatively charge them upon the subject, one way or the other. While it is equally well settled that jurors may consider matters commonly known to all men, they may do so only upon their own motion, without suggestion from the trial judge. We think it is, itself, a matter of common knowledge that jurors, in the processes of determining facts, do resort to that character of knowledge, and we think this is true, regardless of general instructions from the judge. In recognition of that fact, we express the conclusion that the trial judge's instruction in this case, restricting the jury to consideration of facts or circumstances actually in evidence before them, did not have the effect of hampering the jurors in the exercise of the time-honored prerogative, or cause them to shut their eyes and consciences to such matters of common knowledge, if any, as were available to them in the consideration of the one special issue submitted to them. In this connection defendants submit the following as a correct type of charge, as against that actually given: "You are instructed that you must not obtain or receive, and in arriving at your verdict and in your deliberations thereon you must not discuss or take into consideration, any evidence not introduced and admitted upon the trial." We cannot say that the jury would have been less timid under one charge than the other in resorting to facts of common knowledge in their deliberations. We overrule defendants' fifteenth and sixteenth propositions.

In their seventeenth and last proposition defendants contend that the finding of the jury in answer to the one issue submitted to them was not sufficient to support the judgment. We overrule that proposition. We are of the opinion that that finding, considered with undisputed evidence upon subsidiary or evidentiary

issues, settled the case, and that the judgment should be affirmed.

After the foregoing opinion was written, and on November 22, 1939, our Supreme Court handed down its opinion in the case of Stanolind Oil & Gas Co. et al., v. State of Texas et al., 133 S.W.2d 767, reversing the decision of the Austin Court of Civil Appeals in that case (114 S.W.2d 699). A careful consideration of the opinion of the Supreme Court leads to the conclusion that it is decisive of the case presented here, and requires affirmance of the judgment of the trial court, regardless of the other questions raised in this appeal and hereinabove discussed. It is not deemed necessary to here compare the two cases, in detail.

■ It is sufficient to say, generally, that prior to the time the Commissioner of the General Land Office declared the strip of land involved to be unsurveyed public school land, and leased the same to plaintiff Stolley, the defendants filed with the County Surveyor of Duval County, and afterwards with the Commissioner of the General Land Office, their applications to purchase said strip as unsurveyed public school land, accompanying said application with maps and field notes made by said surveyor at the instance of defendants, in which the strip was represented to be a vacancy identical with that decreed in the judgment from which this appeal is prosecuted. Upon the representations in said application, maps and field notes, the Land Commissioner declared the strip to be vacant, and it not being subject to sale on defendants' application, leased it to plaintiff Stolley.

Under a substantially similar state of facts the Supreme Court, in Stanolind Oil & Gas Co. v. State supra, held that the land owners questioning the existence of the vacancy, by their representations admitted the vacancy, and were bound by their admission. It is true that in that case the Supreme Court based their decision, in part, upon the conclusion that the undisputed facts disclosed the vacancy, but that premise is met in this case by a jury finding, upon a conflict in evidence, of the controlling facts establishing the vacancy. We conclude that the decision in that case must rule in this, and for that additional reason the judgment of the court below should not be disturbed.

The judgment is affirmed.