SOUTHERN PINE LUMBER COMPANY V. DAVID L. HART.

No. A-7668. Decided November 30, 1960.
Rehearing Overruled December 21, 1960.
(340 S.W. 2d Series 775)

358

*Minton & Minton,* of Hemphill, *B. F. Whitworth,* of Jasper and *Ward R. Burke,* of Diboll, for petitioner.

The Court of Civil Appeals erred in holding that the land described in the deed to David L. Hart was the identical land described in his pleadings, and that he and the Southern Pine Lumber Company were claiming under a common source of title. Richey v. Miller, 142 Texas 274, 177 S.W. 2d 255; Wooten v. State, 142 Texas 238, 177 S.W. 2d 56; Throckmorton v. Davenport, 55 Texas 236.

*Joe H. Seale, Barber & Seale* and *John H. Seale,* all of Jasper, for respondent.

In response to petitioner's points of error cited Camp v. League, 92 S.W. 1062; Goodson v. Fitzgerald, 90 S.W. 898; Dunn v. Epperson, 175 S.W. 837.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

David L. Hart brought this suit in trespass to try title alleging himself to be the owner of a one-half interest in a tract of 133.53 acres in Jasper County. He alleged that the Southern Pine Lumber Company owned the other half interest. In addition to the usual pleadings of trespass to try title, Hart pleaded,

and the jury found, that he had acquired title to such one-half interest under the ten-year statute of limitations, both with reference to a deed and without reference to a deed. Judgment was entered for Hart on the jury's verdict, and that judgment was affirmed by the Court of Civil Appeals. 329 S.W. 2d 511.

The Court of Civil Appeals sustained the judgment on two grounds: (1) that Hart had proved title from a common source and a prior deed to the half interest from the common source; and (2) that the evidence supported the jury's finding that Hart had acquired title by ten years' adverse possession under a deed duly registered. That court did not pass upon the question of whether Hart had acquired title by ten years' adverse possession without reference to a deed. We shall discuss the questions in the order set out above.

## 1. PROOF OF COMMON SOURCE

Hart did not attempt to deraign title from the sovereign. He attempted to prove a common source of title in James Barker. He introduced a deed from Gates and Brooke to Barker. He then introduced a deed, dated 1933, from Barker to himself conveying a one-half interest in the land in question.

Hart next introduced a deed from Barker, E. E. Davis, and E. A. Lindsey, dated in 1943, to Marshburn purporting to convey the entire title to the land, and a deed from Marshburn to the Temple Lumber Company. Evidence was introduced that the Temple Lumber Company was a predecessor of the Respondent Southern Pine Lumber Company.

We hold that under this court's opinion in Howard v. Masterson (1890), 77 Texas 41, 13 S.W. 635, this does not constitute proof of common source. Reduced to the simplest terms, a deed from X to A does not prove a common source from X, Y, and Z to B.

In Howard v. Masterson, the plaintiff sought to show common source by introducing a deed from McGreal to Lucy Howard, the plaintiff's wife. He then introduced a sheriff's deed which purported to convey the interest of McGreal and Cornelia Levin to the defendant. The plaintiff argued that McGreal was common to both grantees and that in fact the sheriff's deed conveyed no interest from Levin. It was held that common source was not proved even though the deed passed no interest of Levin. In the opinion, Judge Gaines explained the reason for

the holding. When a plaintiff proves that he and the defendant claim from the same grantor and that he has the superior title from him, he has made out a *prima facie* case. It is presumed that the defendant claims no other title. Hence the plaintiff is relieved from making further proof. In the Masterson case, plaintiff had a deed from McGreal and introduced a deed to defendant conveying the interest of McGreal and another person. It was held that the presence of the other person tended to show that defendant was not claiming only under the common grantor, McGreal.

So here, Hart has a deed from Barker. Then he introduced a deed from Barker, Davis and Lindsey to the predecessor in title of the lumber company. Under the holding and reasoning of the Masterson case, Hart's record title cannot stand on that proof as establishing common source.

Counsel for Hart contends, and the Court of Civil Appeals said, that the Masterson decision by this Court had been limited by an opinion of a Court of Civil Appeals to execution sales and sheriffs' deeds, citing Gilmer v. Beauchamp, 87 S.W. 907, in which a writ was refused in 1905. There are several reasons why this is not so: (1) the Masterson opinion has been construed by this Court to lay down general rules regarding common source;[1] (2) the refusal of a writ of error at that time did not have the effect of the approval by this Court of the opinion of the Court of Civil Appeals. Texas State Board of Medical Examiners v. Koepsel (1959), 159 Texas 479, 322 S.W. 2d 609; (3) under the facts in the *Gilmer* case, there was an earlier common source of title in one Hinkley under whom all the parties claimed in addition to the common source relied upon by the Court of Civil Appeals. So this Court might well have concluded that a correct result had been reached. In any event, we do not regard the *Masterson* case as being limited by the *Gilmer* case.

## 2. ADVERSE POSSESSION: THE BOUNDARIES SPECIFIED IN THE DEED.

The deed from Barker to Hart under which Hart claims describes roughly a parallelogram with a southern boundary of

---

1.—"The principle decided [in Howard v. Masterson] was that a grantee in a deed which purports to convey the interest of two or more persons in the land, but which does not specify the particular interest of either, does not * * * admit a previous title to any specifc interest in either the one or the other." Hendricks v. Huffmeyer (1897), 90 Texas 577, 40 S.W. 1. The case is likewise quoted from as one of general application in Federal Land Bank of Houston v. Brooks, 135 Texas 370, 143 S.W. 2d 928, at 930.

700 varas. The tract described in Hart's petition, on the other hand, is a larger tract of a different shape, with a southern boundary of 963.5 varas. It is this larger tract which was the subject of the jury inquiry. The statute under which Hart claims title by limitation says that when possession is taken under a written memorandum of title duly registered, "such peaceable possession shall be construed to be co-extensive with the boundaries specified in such instrument." Art. 5510.

A rough sketch of the land is set out below. Numbers have been added to various corners to simplify the description for purposes of this opinion:

The deed from Barker to Hart, under which Hart claims his adverse possession, describes the land approximately as follows: beginning at point 1 on Mill Creek; then south 15° W 958 varas to point 2; "thence North 75° West with the southern boundary line of said league of land *700 varas* to a stake for corner" and from which certain trees had certain bearings [this is roughly

at point 7 on the above map] ; thence north 15° E with an old marked line to Mill Creek, with a catalpa stake for corner and from which a marked tree had certain bearings; and down Mill Creek to the place of beginning. The deed thus roughly calls for beginning at point 1 and proceeding to points 2, 7, 8, and back to point 1.

The land described in Hart's petition begins at point 1 and proceeds to point 2 as above described. But the southern line beginning at point 2 extends to point 3, a distance of 963.5 varas. The calls then go from point 3 to points 4, 5, 6, and back to point 1.

■ Hart says he is entitled to the longer southern boundary because his deed from Barker refers to the land as being the same land conveyed to Barker by Gates and Brooke. In that deed the southern boundary beginning at point 2 reads: "Thence west with said league line about 800 varas." Assuming that a description of "about 800 varas" which does not call for any monument or object is sufficiently definite, the reference to a description in the former deed cannot here be used to enlarge the tract to which Hart claims title by limitation. Article 5510 says that when adverse possession is begun under a muniment of title, it "shall be construed to be co-extensive with the boundaries specified *in such instrument.*" The deed to Hart contains an unambiguous description. No reference to any other deed is necessary to locate the tract. The reference to the deed to Barker might be helpful to show a chain or origin of title. For example, Hart used it in attempting to prove common source from Barker. But the rule is stated in *Cullers v. Platt,* 81 Texas 258, 16 S.W. 1003, at 1005 :

"Where a grantor conveys specifically by metes and bounds, so there can be no controversy about what land is included and really conveyed, a general description, as of all of a certain tract conveyed to him by another person, or, as in this case, all of a survey except a tract belonging to another person, cannot control; for there is a specific and particular description, about which there can be no mistake, and no necessity for invoking the aid of the general description."

This rule is followed in *Scheller v. Groesbeck,* Texas Com. App., 231 S.W. 1092, and *Coffee v. Manly,* 166 S.W. 2d 377, writ refused (1942).

The deed from Gates and Brooke to Barker may not, there-

fore, be used by reference to enlarge the claim of Hart under his deed from Barker.

But Hart contends that the land described in his petition (being that inside the area from points 1 to 2 and on to points 3, 4, 5, 6 and back to 1) is the same as the property described in the deed from Barker to Hart (Points 1, 2, 7, 8 and back to 1) because his survey said so. The surveyor testified that the two were fundamentally the same. The Court of Civil Appeals held that if an issue of fact existed as to whether the two tracts were identical, that there would be an implied finding in the judgment of the trial court that they were. We hold that as a matter of law the two tracts are not identical. The evidence is undisputed that the surveyor, in running the southern boundary from point 2, neither found nor looked for the stake or bearing trees at the point 700 varas from point 2 described in the deed from Barker to Hart. Instead he went 263.5 varas farther to a corner of the E. E. Willis tract, not called for in the instrument, where there was a fence, a concrete post, and some bearing trees, none of which were called for in the Barker-Hart deed. He gave as a reason for stopping at the Willis corner and fence that "I didn't want to conflict with their lands or any of their contentions." Nor did the surveyor locate or look for the stake or bearing tree on the northern call on Mill Creek. No evidence was introduced as to the location of or search for the "marked line," called for in the deed from Barker to Hart, between points 7 and 8.

The surveyor did not include within his field notes the so-called Sam Hardin 20-acre tract shown on the above map because he understood that Mr. Hart was not claiming that land. The surveyor mainly relied on the word of Sam Hardin for the boundaries of the Hardin tract. There is no evidence of any legal description of it. The surveyor made no attempt to run the west line from point 4 north to Mill Creek or to locate that northwest corner on Mill Creek.

■ Article 5510 which permits the acquisition of title by limitations under a memorandum of title says that "the possession shall be construed to be co-extensive with the boundaries specified in the instrument." This Court laid down the rule in Harmon v. Overton Ref. Co., 130 Texas 365, 109 S.W. 2d 457, 110 S.W. 2d 555, in harmony with the statute, that: "It is well settled that when one enters into possession of land under a deed, his

possession is referable to the deed, and it is presumed to be in conformity with it, and is confined to the limits thereof."[2]

Under the statute and the cases construing it, we hold that Hart's limitation claim under his deed is limited to the unambiguous calls of his deed and that he is limited to the south calls of 700 varas set out in that instrument. We overrule the contention of the Petitioner lumber company that since Hart sued for a larger tract, he cannot recover for the smaller tract for which he may prove title. Smith v. Olsen, 92 Texas 181, 46 S.W. 631; Rule 802, Texas Rule Civil Procedure.

### 3. THE EFFECT OF THE JURY FINDING OF POSSESSION UNDER A DEED.

■ The jury was asked whether Hart had adversely possessed the half interest in the 133-53-acre tract, the tract set out in Hart's pleadings, under a deed. That is the larger tract. We have hel dthat Hart's deed described the smaller tract. In passing upon the question of adverse possession, the jury had before it, therefore, facts regarding adverse possession outside of the bounds of the land described in the deed under which Hart claims. There were but two areas of cultivation within the bounds of the larger tract. One was an area known as "David Hart's Field" and so designated on the map set out above. There is no evidence that the field was enclosed, though there were fences bounding some parts of it. The area of cultivation is not ascertainable from the Statement of Facts. It is generally described as being south of the Jarvis Hardin house and below Hardin's 20-acre tract. In any event, a large part of it is outside of the bounds of Hart's deed as we interpret it. The other cultivated portion is an eight- or ten-acre field to the east of Hardin's house in the general area shown on the map above. While there was evidence that timber was cut from the land, the location of the timber and the place from which it was cut is not set out. There was evidence of Hart's having paid taxes on his half interest in the entire tract, of his having executed a mortgage of his interest in the larger tract, of condemnation proceedings and a right-of-way deed for the construction of U. S. Highway 96 shown on the above map and the listing of Hart as one of the owners. But unquestionably a majority of

---

2.—To claim adjoining land outside the limits of the described boundaries, the possessor must have actual possession of such additional land of such a character as of itself will give notice of an actual adverse possession. Osborn v. Deep Rock Oil Co., (1954) 153 Texas 281, 267 S.W. 2d 781. We find no evidence of any enclosed field or other possession adjoining the boundaries of the land described in the Hart deed of such a character as would support a finding of exclusive, adverse possession in Hart.

the evidence of actual possession by Hart and his tenant was that in "David Hart's Field" which lies mainly outside of the boundaries of Hart's deed. Under those circumstances, the jury passed upon possession of the larger tract which included Hart's Field. On this appeal, that verdict becomes meaningless. We cannot speculate as to what the jury would have found if it had been asked whether Hart had possession of the area described in the Hart deed as construed here. The verdict, therefore, cannot stand, and the judgments of both courts below will have to be reversed and the cause remanded to the trial court for a new trial and for a correct submission of this issue.

There is another problem with regard to the submission of the adverse possession issue which will be discussed below.

### 4. ADVERSE POSSESSION WITHOUT REGARD TO A DEED TO A ONE-HALF INTEREST IN LAND

■ The finding of the jury that Hart and his tenant had had adverse possession to a one-half interest in the larger tract for ten years without regard to a deed raises many very difficult questions of substantive law and of procedure. Many of the problems are not raised and are not briefed. The Court of Civil Appeals did not pass on the points of error attacking the questions of "no evidence" and "insufficient evidence" to support the answer to that issue. Since that court did not pass upon the points, they were not raised in the motion for rehearing of the lumber company or presented to us in its application for writ of error. While we might return the case to the Court of Civil Appeals for it to pass upon the points, we have determined that in the interest of justice these questions should be remanded to the trial court along with the issue of adverse possession under a deed discussed above. Rule 503, Texas Rules of Civil Procedure.

Hart brought the suit alleging himself to be the owner of a one-half interest in the land. He introduced a deed which he asserted vested him with ownership of an undivided one-half interest. He testified on the trial that he recognized the [undivided] ownership of the company to the extent of one-half. This was a recognition of a cotenancy in the land. The theory of Hart's counsel (set out in their brief in the Court of Civil Appeals) is that Hart had exclusive adverse possession of the entire tract and that he simply did not wish to claim the other half undivided interest. Under that theory, the issues to the jury should have been couched in terms of adverse possession of the entire tract, not a half interest in the tract. The finding

of the jury that Hart held adverse possession to a one-half interest does not support Hart's theory. We do not here pass upon the correctness of the theory. We do say that the answers of the jury do not support it.

■ Hart is faced with many decisions forming a general rule to the effect that possession by one cotenant is lawful as to his cotenant. Each cotenant is entitled to possession, and possession by one is not generally adverse to the other in the absence of some repudiation, notice, or ouster. 4 Tiffany on Real Property (3rd ed.) 526, section 1185; 4 Thompson on Real Property (Perm. ed.) 405, section 1881 et seq. Art. 5615 defines "adverse possession" as "an actual and visible appropriation of land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." This Court has, under other circumstances, held that this statute means that the possession must be *exclusive*. Rick v. Grubbs, 147 Texas 267, 214 S.W. 2d 925. If the Respondent Hart has a theory that a person can acquire adverse possession to an undivided interest in the land against a cotenant while recognizing the right of the cotenant to possession of the land with him, he may present it upon the retrial. We do not pass upon that or the other related points at this time because they are not here raised. Compare, Noble v. Hill, 8 Texas Civ. App. 171, 27 S.W. 756, and Le Blanc v. Jackson, 210 S.W. 687 (Comm. App.). And see annotations, 32 A.L.R. 2d 1214, and 27 A.L.R. 8.

## 5. POINTS ON THE ADMISSIBILITY OF EVIDENCE

The lumber company contends that the trial court erred in permitting Hart's surveyor to testify that Jarvis Hardin's wife and Sam Hardin had told him that they, the Jarvis Hardins, were cultivating two fields; that they considered the land to be Mr. Hart's; and that this was David Hart's field across the road from them. The objections were that the statements were hearsay and constituted opinions.

David Hart had already testified that Jarvis Hardin and his wife were occupying and cultivating the land as his tenants. In a suit to establish title by limitation, statements by the occupier of land stating the nature and character of his possession are admissible as an exception to the hearsay rule to show the intention under which he is maintaining possession. The statements are not admissible to prove the truth of ownership or the fact of cultivation but to show intent of the possessor. Hooper v. Hall, 30 Texas 154 (1867). The declaration of a tenant is

admissible under this rule. 1 McCormick and Ray, Texas Law of Evidence (2nd ed., 1956), section 797, pp. 589-591. The lumber company made no request that the testimony be limited. The point is overruled.

The lumber company has other points on the admissibility of evidence. These points need not, and probably will not, arise upon a retrial of the case and hence will not be considered here.

The judgments of the District Court and the Court of Civil Appeals are reversed, and the cause is remanded to the District Court for a new trial.

Opinion delivered November 30, 1960.

Rehearing overruled December 21, 1960.