John E. BURKHART, III, Appellant,

v.

L. B. HORN et al., Appellees.

No. 14136.

Court of Civil Appeals of Texas.

San Antonio.

June 26, 1963.

Rehearing Denied July 24, 1963.

Head & James, Charles R. Cunningham, Corpus Christi, for appellant.

Morrison, Dittmar, Dahlgren & Kaine, San Antonio, Keys, Russell, Keys & Watson, Corpus Christi, for appellees.

MURRAY, Chief Justice.

This suit was instituted in the District Court of Duval County by John E. Burkhart, III, against L. B. Horn and others, seeking by trespass to try title to recover the title and possession of an oil, gas and mineral leasehold estate on 240 acres of land fully described in the pleadings, and in the alternative seeking a declaratory judgment under the provisions of Art. 2524–1 Vernon's Ann.Civ.Stats., establishing rights under his oil, gas and mineral lease on the 240 acres, dated June 20, 1960, granted to him by the alleged fee simple owners of the said mineral estate, Antonio E. Garcia and wife, Antonia G. Garcia, Leopoldo D. Garcia and wife, Rebecca T. Garcia, Maria Antonia Stansell, a feme sole, C. T. Stansell, Jr., and Alicia G. Stansell; and alleging that defendants are asserting an adverse claim to this leasehold estate.

The trial was to the court without the intervention of a jury and resulted in judgment that plaintiff take nothing, and denying all other relief sought by any of the parties, from which judgment John E. Burkhart, III, has prosecuted this appeal.

The trial court made and filed the following findings of fact:

"(1) That on the 20th day of April, 1955, Antonio E. Garcia and wife, Antonia G. Garcia; Leopoldo Garcia and wife, Rebecca T. Garcia; Maria Antonia Stansell and father, C. T. Stansell, Jr., as lessors, executed and delivered to Prescott Williams, as lessee, an oil, gas and mineral lease covering 240 acres of land, more or less, being described as the South one-half of the North one-half (S ½ of N ½) and the East one-half of the Southeast one-quarter (E ½ of the SE ¼) of Survey No. 407, Abstract 37, Certificate No. 1021, A. B. & M. Original Grantee, in Duval County, Texas, for a primary term of five years and so long thereafter as oil, gas or other minerals should be produced from said land in accord with the various provisions of said lease (hereafter referred to as defendant's 240 acre lease).

"(2) That by mesne conveyances the defendants, L. B. Horn, Ray Ellison, H. P. Orts, Reginald H. Roberts, Everett J. Carlson, James A. Rehler, Duward W. Dassow, Northern Pump Company and Henry W. Volk, Jr., hereinafter referred to as the defendant lessees, in this law suit are successors in interest to Prescott Williams in and to the leasehold estate created by the lease referred to in fact finding number (1).

"(3) That the lease instrument referred to in fact finding number (1) authorized the lessee to pool the land described therein with other lands and leases.

"(4) A written declaration of Northern Pump Company pooling the 240 acres of land described in the lease referred to in fact finding number (1) with other land to constitute a unit designated as the Northern Pump Company Unit Λ (the Antonio E. Garcia Gas Unit) for the production of gas and gaseous substances was filed for record on April 1 (April 6), 1960.

"(5) That the 240 acre lease referred to in fact finding number (1) was kept in force during the five year primary term by the payment of delay rentals as provided in the lease instrument.

"(6) That prior to the discovery of oil and gas on the land covered by the 240 acre lease referred to in fact finding number (1) the defendant L. B. Horn drilled a dry hole thereon, which was completed on or about April 6 (April 14), 1960.

"(7) That on April 19, 1960, within sixty days after the completion of the dry hole referred to in fact finding number (6), the defendant, L. B. Horn, commenced drilling operations for the drilling of a well on land covered by the Northern Pump Company Unit referred to in fact finding number (4), but not on any of the land described in the 240 acre lease referred to in fact finding number (1), and the actual drilling of the well was commenced on April 23, 1960.

"(8) The drilling operations of the well referred to in fact finding number (7) were prosecuted continuously until May 5, 1960, when it was discovered that it was capable of producing gas in paying quantities and after the well was cleaned, tested and potentialled, it was thereafter shut-in on or about May 26, 1960.

"(9) That there was no production from the land covered by the 240 acre lease on April 20, 1960, the end of the five year primary term of such lease referred to in fact finding number (1).

"(10) That a check for the shut-in gas royalty payment in the proper amount, payable to all lessors, was mailed to Antonio E. Garcia, May 6, 1960, and received by him.

"(11) That the shut-in gas royalty payment tendered to lessors was returned to the defendant, L. B. Horn, on or about June 5, 1960, without explanation.

"(12) That after shut-in gas royalty payment was tendered to the lessors, they signed a division order.

"(13) That thereafter actual production of gas from the well on the pooled acreage has continued up to and including the present time.

"(13a) That on or about October 9, 1959, Antonio E. Garcia and wife, Antonia G. Garcia, and Leopoldo Garcia and wife, Rebecca T. Garcia, as lessors, executed and delivered to John E. Burkhart III and James S. Adams, as lessees, an oil and gas lease effective April 20, 1960, covering the south half of the northeast quarter (S/2 of the NE/4), the south half of the northwest quarter (S/2 of the NW/4), and the east half of the southeast quarter (E/2 of the SE/4) of the A. B. & M. Survey # 407, A–37, Duval County, Texas, containing two hundred and forty (240) acres, more or less.

"(14) That to sustain his claim of title by proof of common source the plaintiff established that his claim of title to the 240 acres of land in dispute grew out of a lease from Antonio E. Garcia and wife, Antonia G. Garcia, Leopoldo Garcia and wife, Rebecca T. Garcia; that to sustain the defendants' claim of title under a common source the plaintiff established that the defendant lessees' claim of title to the 240 acres of land in dispute grew out of a lease from Antonio E. Garcia and wife, Antonia G. Garcia, Leopoldo Garcia and wife, Rebecca T. Garcia, Maria Antonio Stansell and father, C. T. Stansell, Jr."

Appellant has pointed out certain inaccuracies in these findings which we have corrected by interlineation, but these corrections do not change the substance of such findings in any way so far as this appeal is concerned.

■ We shall first consider appellees' counterpoint one, reading as follows:

"Where the Appellant as Plaintiff in trespass to try title suit failed to establish that his oil and gas lease leasehold estate in the 240 acres of land was better than that of Appellees, the trial court did not err in entering judgment against Appellant."

We sustain this counterpoint. Appellant did not attempt to deraign title from the sovereignty of the soil but attempted to

prove a common source of title. In attempting to do this he introduced a chain of title from the above named Garcias and Stansells to the appellees and introduced an oil and gas lease from the four Garcias only as lessors to himself and one James S. Adams, lessees. This did not establish a common source, and the trial court so found. This exact question was before the Supreme Court in the case of Howard v. Masterson, 77 Tex. 41, 13 S.W. 635, and the very recent case of Southern Pine Lumber Company v. Hart, 161 Tex. 357, 340 S.W.2d 775. In this latter case Justice Greenhill, speaking for the Supreme Court, said:

> "We hold that under this Court's opinion in Howard v. Masterson, 1890, 77 Tex. 41, 13 S.W. 635, this does not constitute proof of common source. Reduced to the simplest terms, a deed from X to A does not prove a common source from X, Y, and Z to B."

Appellant contends that a common source of title was stipulated by the parties. The Statement of Facts shows that at the onset of the trial the following stipulation was announced:

> "MR. CUNNINGHAM: * * * We have stipulated that we have a common source of title on the instruments that come on down to ours. * * * And for the sake of the record I would like to announce that the plaintiff's counsel and the defense counsel have stipulated that we are claiming title under a common source."

Thereafter, near the close of the testimony, the following occurred:

> "MR. DITTMAR: If it please the Court, these are actually plaintiff's exhibits. I don't know that they've ever been identified with the defendants. Do I understand, according to our stipulation, it's considered that these instruments that you introduced, without us putting them in one at a time, are in evidence as exhibits?
>
> "MR. JAMES: Yes, sir.

> "MR. CUNNINGHAM: That's a correct stipulation.
>
> "MR. DITTMAR: As far as the defendants are concerned, all except yours.
>
> "MR. CUNNINGHAM: Yes.
>
> "MR. KAINE: As I understand, Counsel, that is, and necessarily so, is a part of our stipulation of the common source of title.
>
> "MR. DITTMAR: I think that's correct, but I mean I want it clearly understood that ours were introduced by us as defendants.
>
> "MR. JAMES: Sure.
>
> "MR. CUNNINGHAM: I introduced the chains to show a common source in accordance with the Rules of Civil Procedure.
>
> "MR. DITTMAR: And we would like to have introduced that same chain to show our chain of title.
>
> "MR. JAMES: That's right.
>
> "MR. CUNNINGHAM: That's correct.
>
> "MR. DITTMAR: We rest, Your Honor."

■ We interpret these stipulations as going no further than agreeing that there was a common source of title, and that it would not be necessary for appellant to deraign title any further back than that common source, but there was no stipulation as to who that common source was. Thus the burden still remained on appellant to prove who or what that common source was, and that both appellant and appellees were deraigning title from that common source, and that his title was superior to that of appellees. Having failed to show a common source, it was impossible for appellant to show his title was superior to that of appellees.

■ A stipulation that there is a common source without stipulating the common

source, is more or less meaningless. The common source still has to be established by evidence. Appellant having failed to establish a common source, was not entitled to recover on his trespass to try title count, and therefore the appellees being in possession were entitled to judgment in their favor, recovering the leasehold estate in the 240 acres involved. 41–A Tex.Jur. 665, § 138.

Appellant having lost his trespass to try title cause, and appellees being entitled to a judgment awarding the title and possession of the leasehold estate in the 240 acres involved, appellant was not thereafter entitled to a declaratory judgment establishing his lease as being superior to that held by appellees. In trespass to try title appellant must recover, if at all, upon the strength of his own title and he may not recover upon the weakness of appellees' title. 41–A Tex.Jur. 665, § 138 et seq.

There is another reason why appellant was not entitled to the declaratory judgment for which he prayed. The lease held by him was an "unless" lease. Under its terms, unless he began drilling operations or paid $240.00 rentals before July 12, 1961, his lease would terminate. The record is silent as to whether appellant began drilling operations or paid the rentals in the sum of $240.00. The burden was upon appellant to show affirmatively that he had an actual, real, bona fide and justiciable controversy with appellees as to the leasehold estate asserted by him. In order to do this the burden was upon him to show that his lease had not terminated by its own provisions. The declaratory judgment statute, Art. 2524–1, supra, does not authorize courts to determine abstract or hypothetical questions, or to render merely advisory opinions on contingent facts that do not presently exist or that may be subject to change or are unknown. Willis v. Sabine River Authority, Tex.Civ.App., 363 S.W.2d 172; 19 Tex.Jur.2d, p. 147, § 9, p. 162, § 23, and p. 172, § 32.

We are familiar with Petroleum Producers Company v. Stolley, Tex.Civ.App., 137 S.W.2d 207. In that case the State of Texas was the holder of the fee in the strip being contested over. The State joined the lessee in the suit, thus creating a presumption that lessee had performed his obligations under the terms of the lease, and that it had not terminated. The Court said: "The fact that the State has joined its lessee in prosecuting the suit precludes any presumption that the lessee has forfeited his leasehold interest, and the lessee is entitled to recover along with the lessor." Here the alleged landowners were made parties defendant by appellant and appeared in the case, taking an absolute neutral position as between appellant and appellee. Furthermore, the Stolley case did not involve a declaratory judgment.

The judgment of the trial court is affirmed.