**O. W. RACKLEY et al., Appellants,**

v.

**Edgar MAY, Appellee.**

**No. 15843.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 24, 1972.

Rehearing Denied April 6, 1972.

Joe L. Price, Trinity; J. V. Price, Groveton, for appellants.

Joe J. Newman, Houston, for appellee.

PEDEN, Justice.

Appeal from judgment awarding title to a 14.33 acre tract to defendant based on jury finding of his ten years' adverse possession. Two of the appellants originally brought suit for partition of the tract, alleging that they and the defendant jointly owned the tract. He answered by denial that they had any right, title or interest in the tract, by general denial, by pleading limitations and by allegation that he was a good faith purchaser of the tract and has held it openly and notoriously adverse to everyone by deeds duly executed to him on record in the office of the County Clerk of Trinity County, the county where the land is located.

By amended petition labelled "Cross Defendants' First Amended Original Answer" filed January 8, 1971, O. W. Rackley and his daughter Dorothy Meyer, the original plaintiffs, were joined by Nadine Dunaway, Claudine Burnes, Elayne Webber, Mary Ann Bright, Vernon Dwire, Herbert Dwire, Euna Broyles and Vera Smith. They called themselves cross-defendants, pleaded not guilty to Edgar May's allegations, denied his pleas of adverse possession, and plead that Harvey and Mary Dunlap, both of whom died intestate, were the common source of title of all the parties, including Edgar May. They further alleged the names of each of the Dunlaps' four daughters, that each died intestate, they alleged the names of the daughters' descendants, and they recited each of the

conveyances of record and traced the ownership of each interest in the property in question.

Appellants' first three points of error are 1) no evidence, 2) insufficient evidence and 3) great weight of the evidence points as to whether the appellee had repudiated the title of his cotenants or that he had given them notice that he was claiming the land adversely to them. Appellants' other points of error are 4) no evidence, 5) insufficient evidence and 6) great weight of the evidence points as to whether the use and possession of the land by the appellee was other than as that to which he was entitled as a cotenant.

The only special issue submitted to the jury was:

"Do you find from a preponderance of the evidence that the Defendant, Edgar May, and those under whom he claims, have held exclusive, peaceable and adverse possession of the 14.33 acre tract of land in dispute and made the basis of this suit, using, cultivating or enjoying the same for any period of ten consecutive years or longer, prior to September 18, 1969?"

Among the instructions given in the trial court's charge were these:

"In connection with the above and foregoing Special Issue you are instructed that if you believe from a preponderance of the evidence that if the Defendants or those under whom they claim went into possession and occupied the tract of land in question, if you find from a preponderance of the evidence that they did go into possession of the land, as a cotenant of the Plaintiffs, their possession would be presumed to have been in the right of the common title and not adverse to the other cotenants, and not adverse to the other cotenants unless and until they repudiated the title of their cotenants to any interest in the tract of land in controversy and then, after such repudiation, if any, held the same adversely to the title of said cotenants, if you find they did so, and

until the Defendants in person or through others acting for them, gave notice of such repudiation and adverse claim, if any, to said cotenants.

"Co-tenance or tenancy in common means where two or more parties own undivided interest in the same tract or tracts of land.

"By 'Notice' is not necessarily meant actual notice of such adverse possession and claim, but such notice may be presumed to have been brought home to the Plaintiffs if the Jury finds from a preponderance of the evidence that the adverse possession, if any, and claim of title, if any, on the part of the Defendants and those under whom they claim, was open, notorious, exclusive and unequivocal and for such a length of time as to be inconsistent with the existence of title in the Plaintiffs."

That the relationship between the parties was one of cotenancy was established by uncontroverted evidence.

In Todd v. Bruner, 365 S.W.2d 155 (Tex.1963), the Supreme Court said:

"It is the settled law in this state that, 'The possession of a cotenant or tenant in common will be presumed to be in right of the common title. He will not be permitted to claim the protection of the statute of limitations unless it clearly appears that he has repudiated the title of his cotenant and is holding adversely to it.' Phillipson v. Flynn, 83 Tex. 580, 19 S.W. 136; Poenisch v. Quarnstrom, Tex.Sup.Ct., 361 S.W.2d 367.

" . . . . . .

"Insofar as the true owner of property is concerned, there is a vast difference between the notice of adverse claim conveyed by the presence of a stranger in possession and that of a cotenant in possession. It is not unusual for one cotenant to have exclusive possession and make beneficial use of lands for rather long periods of time and ordinarily such use is with the acquiescence of the other cotenants. Cotenancy is a common form

of land tenure when owners belong to the same family. This results largely by the operation of the statute of descent and distribution and commonly followed customs and practices relating to the making of devises of lands. The legal presumption follows a generally recognized habit or practice based upon years of observed experience. The statutes of limitations are statutes of repose. They are intended to settle and support land titles and are not designed to afford a method whereby one member of a family may appropriate property belonging to his kinsman. Hence the legal requirement that notice of repudiation of the common title should be clear, unequivocal and unmistakable. . . . The real property statutes of limitations as to cotenants are not designed to run in secrecy and silence. Brown v. Bickford, Tex.Civ.App., 237 S.W.2d 763, wr. ref. n. r. e. . . .

" . . . . . .

"Any cotenant has a right to be in the possession of property in which he owns an interest, hence if the acts of the respondents and their predecessors in title are susceptible of explanation consistent with the existence of the common title then such acts cannot be such as to give constructive notice to the cotenants out of possession. Southern Pine Lumber Co. v. Hart, 161 Tex. 357, 340 S.W.2d 775, citing 4 Tiffany on Real Property (3rd ed.) 526, § 1185; 4 Thompson on Real Property (perm. ed.) 405, §§ 1881 et seq.

"Possession, coupled with payment of taxes, is not notice to a cotenant of a repudiation of the common title. Stiles v. Hawkins, Tex.Com.App., 207 S.W. 89; Poenisch v. Quarnstrom, Tex.Sup.Ct., 361 S.W.2d 367.

"The cutting of timber is not in itself notice of repudiation of a cotenant's title, although it may give rise to a right for an accounting. Kirby Lumber Co. v. Temple Lumber Co., 125 Tex. 284, 83 S.W.2d 638.

" . . . . . .

"The authorities are in agreement upon the proposition that the law point is the same in a cotenant case as it is in a landlord and tenant situation. In commenting upon Sweeten v. Park, 154 Tex. 266, 276 S.W.2d 794, it was said in the Texas Law Review that:

" 'In Sweeten v. Park the Texas Supreme Court has set forth the doctrine which should become the basis of all future law in the area of adverse possession by tenants. Its soundness is attested by the fact that it is the rule in the majority of American jurisdictions. The policy of permitting a tenant to acquire a limitation title against his landlord by only ordinary acts of ownership may have been suited to a frontier society in which land titles were relatively unstable at best. It loses its validity, however, in a settled society in which stability is achieved largely through registration of deeds and other written documents. For the protection both of the landlord under whom the tenant enters and of persons who may later purchase from him, it is essential that the acquisition of title by a tenant be made dependent upon clear and unequivocal notice of his repudiation of the tenancy and his intention to claim the land for himself.' Betty Jo Wiest Christian, 'Adverse Possession by Tenants in Texas,' 38 Tex.Law Review 320."

In our case the appellee contends in his brief that he had the exclusive use and possession of the land against everyone from the time of his purchase until the time of the filing of the suit by the Rackleys some ten years and a few months later. He does not contend that his adverse possession of the land began before he purchased an interest in it. The special issue submitted to the jury inquired about appellee's adverse possession prior to September 18, 1969, the date on which the Rackleys filed their petition, and appellee, Mr. May,

testified that he bought the 14.33 acre tract on May 18, 1959, the date shown on his deed from Raymond E. Dunaway. Therefore it was the appellee's burden, in raising the ten-year limitations issue, to show that he had adverse possession of the tract for ten years after he had given his cotenants the requisite notice of his repudiation of the cotenancy relationship; i. e., that as to the Rackleys (including their daughter, Mrs. Meyer) he gave them such notice between May 18, 1959 and September 18, 1959. The other cotenants first appeared in this cause on January 9, 1971, so as to them the appellee had until January 9, 1961 to give notice of his repudiation of the cotenancy. Todd v. Bruner, supra.

In our review to determine whether there is any evidence that the appellants had notice of such repudiation between May 18, 1959 and January 9, 1961, we consider only the evidence and the inferences favorable to the jury finding and disregard all evidence and inferences to the contrary. Garza v. Alvaiar, 395 S.W.2d 821 (Tex. 1965).

Mr. May, when called as an adverse party, testified that he and Mr. Dunaway, his grantor, had helped a Mr. Kirkland survey the land in question. That when he had filed his deed from Mr. Dunaway he hadn't noticed that it recited that the grantor conveyed only "all my right, title and interest" in the tract. He thought he was buying all of the 14.33 acre tract, and Mr. Dunaway had told him he owned it all. That he (May) had claimed all of it ever since the deed was executed. That he discussed it with appellants' attorney only once, and that was at least three or four years after the deed was executed. Before that time he had never discussed the ownership of the land with O. W. Rackley or his daughter, Dorothy Meyer, who are the original plaintiffs in this suit.

That when he got his deed there were some fences in places on the sides of the tract, but they did not enclose it. When asked what he had done after he got the deed to evidence to others that he was claiming the tract against all others, he said that he had fenced it within 30 days. Also, that he told everybody who asked him anything about it that he owned it. He didn't tell O. W. Rackley or his daughter this, because he never did see them.

Mr. May was then asked to what use he had put the 14.33 acre tract and the extent to which he had excluded all others. He replied that he farmed part of it and pastured it. That in 1948 or 1949 Mr. Rackley had built or repaired a fence between the 14.33 acre tract and an adjoining 4 acre tract that May has owned since before 1959.

Mr. May said he discussed the matter of the Rackleys' claim to the land with their attorney, Mr. Price, on two occasions, both of which were "several years" after May 18, 1959. He said he told Mr. Price he had bought and was claiming the tract shown by his field notes. Later he testified that he couldn't recall having told Mr. Price that if the Rackleys had an interest in the property, he was repudiating it; he said they had no interest and he owned it all. He said it was possible that he and Mr. Price had agreed on some disposition of this matter other than by a lawsuit, but he can't remember.

Mr. May testified that the lawsuit was filed a little over ten years after he completely, irrevocably repudiated any interest or claim that the Rackleys had in the land. He did not say how he had repudiated their interest or claim.

On direct examination he testified that his deed and plat from Mr. Dunaway were filed for record on May 20, 1959. That Dunaway had previously sold the timber off the tract to a man who had then cut it.

Within thirty days after May 18, 1959, he removed the fence between his 4 acre tract and the 14.33 acre tract. He kept the 14.33 acre tract fenced until last year. He said he grew crops or pastured his stock on the land each year and excluded everyone

from the use of it. He was asked about his having been cross-examined concerning a meeting with Mr. Price in 1962 and he said at that time he stated he was claiming the land. Mr. May testified that he had the peaceable, continuous possession of the tract under a fence, and claiming it, for ten years and three months when he was served with citation in this case on September 20, 1969. That the appellants other than the Rackleys filed their pleadings on January 11, 1971, and he had not previously heard of them or of their claims. When he was again cross-examined Mr. May related that he had told everybody that knew him around there that he owned the land. When asked to name some of them, he replied that he "made it publicly" that he did. He couldn't recall their names. "Mr. Lowry or any of those neighbors in there." (Lowry is not a party to this suit and it has not been shown that he was a cotenant.)

A witness, Mrs. Pipes, testified that within the last four years Mr. May told her she didn't own anything in the tract in question.

Mr. Edward Meyer, husband of a cotenant, testified that he found a lock on a gate leading to the land when he was there in 1962, and Mrs. Meyer testified that she had learned that Mr. May had put it there.

Mr. W. F. Rogers, who is not a party to this suit, was asked on cross-examination whether he knew of his own knowledge that Mr. May has been claiming the property as his since he purchased it in 1959 from Mr. Dunaway. He replied: "Yes, sir. I guess so." He did not explain how he gained this knowledge, but he testified that he knew Mr. May had kept the land in cultivation and had used it as a pasture. He did not testify that he had ever communicated to anyone his awareness of Mr. May's claim. During the trial Mr. Rogers stated that he did not then claim and never had claimed, any part of the 14.33 acres. His home is on a tract of a little more than three acres which had been bought by his father many years ago and had been fenced and occupied during that time.

Mr. Yates testified that Mr. May had his stock on the property since 1962.

Mrs. Edgar May corroborated much of her husband's testimony concerning his adverse possession of the 14.33 acre tract, but she did not add any evidence of any type of notice given to the cotenants.

■ We hold that there is no evidence in the record in this case to show that the appellee timely gave sufficient notice to any of the appellants or to any of their predecessors in title that he was claiming the 14.33 acre tract adversely to them or that he had repudiated the title of his cotenants. As we have shown, the only evidence that the appellee ever gave these cotenants actual notice of repudiation, directly or indirectly, was his testimony that in 1962 he told Mr. Price, the attorney for the Rackleys, that he was claiming the land, and there was no evidence that before 1962 May gave any of his cotenants notice by possession alone that would meet the standard required in Texas as stated in Todd v. Bruner, supra, that it "must have been of such unequivocal notoriety as to presumably convey to petitioners or their predecessors in title notice of the respondents' adverse claim." We sustain the appellants' first point of error, so we do not reach their others.

Appellee's ninth reply point is that the trial court's judgment was correct because there was no pleading and proof that no administration was had and that there was no necessity for an administration upon the estate of Harvey and Mary Dunlap, Femmie Dunlap Dunaway, Lizzie Dunlap Dwire and Etta Dunlap Lawrence, but only that such parties died intestate. We think the point is without merit.

As we stated in Izard v. Townsend, 208 S.W.2d 666 (1948), it is the well settled rule in this State that " 'before heirs, as such, can maintain a suit to recover a chose in action or other property which

225

has descended to them, within the period allowed by law for the taking out of an administration, they must plead and prove facts entitling them to prosecute the action, and, in the event the suit is brought within the four-year period allowed by law for an administration, they must plead and prove that there is no administration pending and none necessary. A petition that fails to affirmatively allege these facts is fatally defective and subject to a general demurrer.' Youngs v. Youngs, Tex.Com.App., 26 S.W.2d 191, 193, and authorities there cited."

▮ The record shows that the interest of Etta Lawrence passed by conveyance, not by descent and distribution, and that each of the other named persons died far more than four years before this cause was filed. The administration period having passed, the appellants, in making their uncontroverted proof of cotenancy by showing common source of title with the appellee, were not required to plead or prove that there was no administration had and no necessity for same as to the estates of Mr. and Mrs. Dunlap, the common source of title, or of those which were links connecting the parties' titles to the common source.

We have omitted from our review of the record any mention of the fact that the tract of land in question originally consisted of 27.5 acres but that some of the heirs of Harvey and Mary Dunlap have fenced, occupied and used a total of 13.17 acres of it, leaving only the 14.33 acres which is in controversy here. During the trial of this case W. F. Rogers, Clayton Yates and the Lillie Roach heirs, who are record owners of interests equivalent to 10.3 acres (but who were in possession of 13.17 acres) disclaimed any interest in the 14.33 acres and the parties to this suit announced that they claimed no interest in the 13.17 acre tract.

▮ As pointed out in 44 Tex.Jur.2d 265–266, Partition, § 20, the fact that plaintiff is not in possession of the land but that defendant is in possession and denies that the plaintiff is a cotenant and claims the whole of the land for himself does not defeat the plaintiff's right to maintain his suit for partition brought in the form prescribed by statute. In such case, the burden is on the plaintiff to establish his right to the interest in the land claimed by him or to some interest therein. If he discharges his burden he is entitled to partition; otherwise he is not. The plaintiff need not deraign his title beyond the common source under which he and the other cotenants claim ownership.

We hold that the appellants have shown themselves entitled to partition of the 14.33 acres. The interest which Mr. May obtained from Raymond Dunaway was one-twentieth of 27.5 acres. Dorothy Meyer has shown that she has conveyances of two-twentieths plus a one-eighth interest, or a total of a nine-fortieths' interest, in 27.5 acres. Mr. Rackley has a conveyance of a one-twentieth interest in 27.5 acres. Nadine Dunaway and her daughters, Claudine Burnes, Elayne Webber and Mary Ann Bright, collectively inherited a one-twentieth interest in 27.5 acres. Vernon Dwire, Herbert Dwire, Euna Broyles and Vera Smith collectively inherited a one-fourth interest in 27.5 acres. Title to the remaining three-eighths' interest in the 27.5 acres was in those who occupy the 13.17 acres and make no claim to the 14.33 acres; if their three-eighths' interest is divided proportionally among the parties to this suit and the 14.33 acres are divided among the parties in accordance with the evidence, we calculate that Mr. May is entitled to 1.1464 acres, as is Mr. Rackley. Mrs. Meyer is entitled to 5.1588 acres, Vernon Dwire, Herbert Dwire, Euna Broyles and Vera Smith are collectively entitled to 5.732 acres and Mrs. Nadine Dunaway, Claudine Burnes, Elayne Webber and Mary Ann Bright are collectively entitled to 1.1464 acres.

The judgment of the trial court is reversed and remanded with instructions to partition the 14.33 acres in keeping with this computation.