SCOTT MASON PRATHO, M.D. V. LUPE ZAPATA, INDIVIDUALLY AND AS NEXT FRIEND FOR SABRINA ZAPATA AND GREGORY ZAPATA, AND AS HEIR OR REPRESENTATIVE OF THE ESTATE OF REYNALDO ZAPATA, DECEASED

(comment: 1)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-051-CV

SCOTT MASON PRATHO, M.D. APPELLANT AND

APPELLEE

V.

LUPE ZAPATA, INDIVIDUALLY APPELLEE AND

AND AS NEXT FRIEND FOR SABRINA APPELLANT

ZAPATA AND GREGORY ZAPATA, AND

AS HEIR OR REPRESENTATIVE OF THE

ESTATE OF REYNALDO ZAPATA, DECEASED

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Appellant Scott Mason Pratho, M.D. appeals from a judgment rendered on a jury verdict awarding damages to the survivors of his deceased patient, Reynaldo Zapata, after Dr. Pratho failed to diagnose and treat Zapata’s heart condition.  Lupe Zapata also appeals the trial court’s judgment notwithstanding the verdict invalidating the jury’s award of damages for pain and suffering sustained by Zapata before his death.  Because we hold that Mrs. Zapata produced legally sufficient evidence of proximate cause, and because we further hold that she established standing to sue on behalf of Zapata’s estate at the time of trial, we will affirm the trial court’s judgment in part and reverse in part. 

Forty-nine-year-old Reynaldo Zapata died at home of a heart attack on May 27, 1997.  In the two weeks before his death, Zapata had been evaluated and treated by two emergency room physicians at Harris Methodist Southwest Hospital and a family practitioner, all of whom failed to diagnose Zapata’s heart problem: unstable angina.  Zapata was first seen by emergency room physician Brett Landon Cochrum, M.D., at Harris Methodist on May 19, 1997, where he complained of a burning throat and tingling in his right arm.  Dr. Cochrum concluded that Zapata was suffering pain from an upper respiratory infection and treated him accordingly.

Zapata returned to the emergency room the next day, May 20, 1997, where he was seen by Dr. Pratho.  Dr. Pratho’s assessment was that Zapata suffered from “[n]onspecific neck pain possibly related to cervical disc disease.” Dr. Pratho prescribed Zapata pain medications and steroids, placed his neck in a soft cervical collar, and directed him to follow up with his family practitioner in “the next available appointment for reevaluation and possible work-up.” 

The following day, May 21, 1997, Zapata was seen by John E. Staniland, M.D., the partner of Zapata’s regular family doctor.  Dr. Staniland diagnosed Zapata with “musculoskeletal pain radiating from the neck.”  Dr. Staniland prescribed a narcotic pain medication, ordered an x-ray of Zapata’s neck, and referred Zapata to a neurologist.  Zapata suffered a heart attack and died six days later.

Zapata’s widow, on behalf of herself, her two children fathered by Zapata,
(footnote: 1) and Zapata’s estate, sued Harris Methodist and the three doctors,
(footnote: 2) alleging that the doctors’ failure to diagnose and treat Zapata’s heart condition proximately caused Zapata’s death and ensuing damages to his wife and children.  After Mrs. Zapata settled during trial with Harris Methodist, Dr. Cochrum, and Dr. Staniland, the trial court submitted her claims against Dr. Pratho to the jury.  The jury found Dr. Pratho negligent and further found that 30% of the negligence that caused Zapata’s death was attributable to Dr. Pratho. 

I.  DR. PRATHO’S APPEAL

On appeal, Dr. Pratho argues that the judgment against him should be reversed because Mrs. Zapata did not produce legally sufficient evidence of proximate cause.  Dr. Pratho acknowledges that there was expert testimony that the medical treatment by other defendants were proximate causes of Zapata’s death, but he claims there was no expert testimony that the treatment he provided was a proximate cause of Zapata’s death.  Furthermore, Dr. Pratho claims that the evidence failed to establish that he should have foreseen that his treatment would result in Zapata’s death.

In determining a “no-evidence” issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary.  
Bradford v. Vento, 
48 S.W.3d 749, 754 (Tex. 2001)
; Cont’l Coffee Prods. Co. v. Cazarez, 
937 S.W.2d 444, 450 (Tex. 1996);
 In re King's Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).  Anything more than a scintilla of evidence is legally sufficient to support the finding.  
Cazarez,
 937 S.W.2d at 450;
 Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996).  More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.  
Rocor Int’l, Inc. v. Nat’l Union Fire Ins. Co.
, 77 S.W.3d 253, 262 (Tex. 2002).
  

In a medical malpractice case, a plaintiff must prove that the negligence of the defendant physician proximately caused the injury alleged. 
Hart v. Van Zandt
, 399 S.W.2d 791, 792 (Tex. 1965).  To establish proximate cause, a plaintiff must show (1) cause-in-fact, i.e., that the defendant's negligence was a substantial factor in bringing about the injury and without which no harm would have occurred, and (2) foreseeability, i.e., that the defendant should have anticipated the danger that resulted from his or her negligence.  
Arlington Mem’l Hosp. Found., Inc. v. Baird
, 991 S.W.2d 918, 922 (Tex. App.—Fort Worth 1999, pet. denied).  The trier of fact may decide the issue of causation in medical malpractice cases based upon (1) scientific principles provided by expert testimony allowing the fact finder to establish a traceable chain of causation from the condition back to the event; (2) a probable causal relationship as articulated by expert testimony; or (3) general experience and common sense from which reasonable persons can determine causation.  
Marvelli v. Alston
, 100 S.W.3d 460, 470 (Tex. App.—Fort Worth 2003, pet. denied) (citing 
Parker v. Employers Mut. Liab. Ins. Co
.
 of Wis.
, 440 S.W.2d 43, 46 (Tex. 1969)).

Dr. Pratho argues that because Mrs. Zapata presented no expert testimony articulating a probable causal relationship between his treatment of Zapata and Zapata’s death, the evidence was legally insufficient to support the jury’s verdict against him.  Under 
Marvelli
, however, this is only one manner of proving causation.  If the expert testimony presented by Mrs. Zapata established medical principles that allowed the jury to trace a chain of causation from Zapata’s death back to Dr. Pratho’s treatment of him the second time he visited the emergency room, then the jury had sufficient evidence before it of causation and its verdict will stand.  
See id.
 at 470; 
Rocor Int’l
, 77 S.W.3d at 262.

At trial, Mrs. Zapata presented the expert witness testimony of William O’Riordan, M.D., a physician who is board certified in emergency medicine.  The expert witness testified that Zapata probably was suffering from unstable angina due to the following symptoms that Zapata exhibited when he was treated by Dr. Cochrum at his first emergency room visit:

one and one-half weeks of waxing and waning symptoms with a variety of locations of discomfort;

pain or discomfort and symptomology that increased with exertion;

an EKG that was “highly suspicious for having an old inferior wall or old heart attack or a previous heart attack” and that contained “slightly down sloping or horizontal type[s] of changes”; and

risk factors, including his male gender, obesity, and smoking.

The expert witness testified that Zapata presented symptoms similar to these to Dr. Pratho when Zapata returned to the emergency room the next day.

In addition, the expert witness opined that both Dr. Cochrum and Dr. Pratho were negligent in failing to treat Zapata’s heart condition.  In discussing Dr. Cochrum’s negligence, the expert witness explained the omissions made by Dr. Cochrum that formed the basis of his negligence opinion:

The presentation [of Zapata’s symptoms] required the patient being admitted into the hospital under a cardiologist’s care, and in the emergency department treating the patient by starting an IV, administering oxygen, finding out how much oxygen he had circulating in his blood through a pulse oxymeter, administering the Nitroglycerin, aspirin, a medication through the IV or by mounth to lower the blood pressure, and if the chest pain did not disappear, start intravenous Nitroglycerin.  Also, blood thinners which were the standard at that time in the form of either a substance called Heparin or glomalocary (phonetic) Heparin should have been started.

The expert further testified that this negligence was a proximate cause of Zapata’s death.  The expert witness did not, however, go on to state specifically that Dr. Pratho’s negligence was also a proximate cause of 
Zapata’s death.

Nevertheless, we conclude that this expert testimony
 provides legally sufficient evidence of a causal relationship between Dr. Pratho’s treatment and Zapata’s death because the expert witness’s testimony set forth medical principles that, under the facts of this case, applied to both Dr. Cochrum and Dr. Pratho.  The expert’s testimony provided evidence that Zapata exhibited certain symptoms of unstable angina both when he was treated by Dr. Cochrum and when he was treated by Dr. Pratho and that these symptoms required actions such as admitting Mr. Zapata to the hospital and consulting a cardiologist—actions that Dr. Pratho did not take.  Furthermore, the expert witness’s testimony provided evidence that the failure to take these actions caused Zapata’s death.

Even so, Dr. Pratho argues that there is no evidence of proximate cause because there was no evidence of foreseeability.  Dr. Pratho argues that Mrs. Zapata proffered no evidence that he should have reasonably foreseen that his specific treatment of Zapata—sending him home with instructions to follow up with his primary care physician—would lead to Zapata’s death.  Dr. Pratho argues that because Dr. Cochrum sent Zapata home only and did not additionally instruct him to see his primary care physician, Dr. Pratho’s course of treatment differed from Dr. Cochrum’s, so any causation evidence relating to Dr. Cochrum’s treatment is inapplicable to the differing treatment that Dr. Pratho provided to Zapata.  

This argument fails to acknowledge, however, that Dr. Pratho’s negligence and Dr. Cochrum’s negligence were the same: they both failed to provide proper medical care for Zapata’s unstable angina.  Dr. Pratho committed the same negligent omissions that Dr. Cochrum committed; they both failed to admit Zapata to the hospital under a cardiologist’s care, and they both failed to treat Zapata in the emergency room by starting an IV, administering oxygen, measuring the amount of oxygen in Zapata’s blood, and administering blood pressure-lowering medication and blood thinners.  While Dr. Pratho may have instructed Zapata to follow up with his primary care provider, this instruction does not ameliorate Dr. Pratho’s omissions in the emergency room—the type of omissions that, according to the expert’s testimony, were the cause of Zapata’s death.  

At trial, the court properly instructed the jury on the foreseeability element of proximate cause with respect to Dr. Pratho: “In order to be a proximate cause, 
the act or omission claimed of must be such that an emergency room physician using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom.” 
 See
 
Arlington Mem’l
, 991 S.W.2d at 922.  
The expert witness testified at trial that Dr. Pratho, as an emergency room physician, should have had actual awareness of 
the risk that if Zapata had unstable angina and were sent home without treatment, his 
condition could lead to a heart attack and even death.

Despite his argument to the contrary, Dr. Pratho did send Zapata home untreated; as the expert witness explained, the proper treatment of Zapata’s condition involved hospital admission, consultation with a cardiologist, and administration of oxygen and medicines in the emergency room, but Dr. Pratho sent Zapata home without taking any of these actions.  The mere fact that Dr. Pratho told Zapata to follow up with his primary care physician does not affect the awareness that sending Zapata home without treating his heart condition could lead to Zapata’s death.  We conclude that this evidence satisfies the legal definition of foreseeability, as the jury was properly instructed.  
See id.
  Furthermore, the scientific principles established by the expert witness’s testimony allowed the jury to conclude that Dr. Pratho’s negligence proximately caused Zapata’s death because Dr. Pratho committed the same omissions that Dr. Cochrum committed—omissions that, according to the expert’s testimony, were a proximate cause of Zapata’s death.  Accordingly, we overrule Dr. Pratho’s issue on appeal.

II.  MRS. ZAPATA’S CROSS-APPEAL

In a cross-appeal, Mrs. Zapata challenges the trial court’s grant of Dr. Pratho’s motion for judgment notwithstanding the verdict regarding the damages awarded by the jury to Zapata’s estate, in which Dr. Pratho argued that Mrs. Zapata failed to present evidence that she had standing to bring suit on behalf of Zapata’s estate.  

In her live petition at the time of trial, Mrs. Zapata pleaded that she had standing as an heir to assert claims on behalf of Zapata’s estate because no estate had been opened and no probate was necessary.  After trial, however, Mrs. Zapata requested leave to file an amended petition substituting her daughter, Sabrina Zapata Nava, as the plaintiff for claims brought on behalf of Zapata’s estate.  This motion for leave to file asserted that Sabrina had been appointed the administrator of Zapata’s estate and was therefore the proper plaintiff for the estate’s survival claims.  The trial court judge refused Mrs. Zapata’s request for leave to amend, granted Dr. Pratho’s motion for JNOV regarding the estate’s recovery, and rendered a judgment for Mrs. Zapata that excluded the survival damages awarded by the jury to Zapata’s estate.

Texas’s survival statute provides that a cause of action for personal injuries suffered by a person who has died survives to and in favor of the heirs, legal representatives, and estate of the injured person.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 71.021(b) (Vernon 1997).  The estate of a person with a spouse and children who dies intestate passes to the decedent’s heirs: the spouse and children.  
See
 
Tex. Prob. Code Ann.
 §§ 37, 38(b)(1) (Vernon 2003).  Generally, however, only the personal representative of an estate is entitled to sue to recover estate property. 
 Shepherd v. Ledford
, 962 S.W.2d 28, 31-32 (Tex. 1998).  This general rule has specifically been applied by the Texas Supreme Court to survival actions.  
See id.
  

An exception to this general rule allows an heir, rather than the estate’s personal representative, to sue to recover estate property when the heir pleads and proves that there is no estate administration pending and none is necessary.  
See id
.  Mrs. Zapata argues that she qualified under this exception to sue as an heir on behalf of Zapata’s estate and that the trial court erred in granting Dr. Pratho’s motion for JNOV because she established standing to bring claims on behalf of Zapata’s estate by presenting evidence that no estate administration was pending and none was necessary.

A. 
“Pending” estate administration

Under the general rule applied in 
Shepherd v. Ledford
, if an estate is pending, an heir does not have standing to sue on behalf of the estate because the estate’s personal representative generally has the exclusive right to bring such suits.  
See id.
 at 31-32; 
Chandler v. Welborn
, 156 Tex. 312, 294 S.W.2d 801, 806 (1956).  Mrs. Zapata filed her application for letters of administration while the trial was taking place.  Therefore, if an estate is “pending” at the time a request for letters of administration is filed in probate court, Mrs. Zapata could not qualify at the time of trial to sue as an heir on behalf of Zapata’s estate.  
Cf. Henry v. LaGrone
, 842 S.W.2d 324, 326-27 (Tex. App.—Amarillo 1992, no writ) (holding that the estate of an incapacitated person was pending before the probate court upon the filing of a motion for appointment of a guardian).  

The probate court did not issue the requested letters of administration naming Sabrina as personal representative of Zapata’s estate until September 12, 2002—two months after the jury returned its verdict.  Consequently, Sabrina did not have standing at the time of trial to sue as an administrator on behalf of Zapata’s estate because the probate court had not yet appointed her administrator of the estate.  
See Lorentz v. Dunn
, 112 S.W.3d 176, 179 (Tex. App.—Fort Worth 2003, pet. granted) (holding that plaintiff who was not named personal representative until twelve days after filing suit on behalf of the estate did not have standing at the time suit was filed).  Therefore, if Zapata’s estate was “pending” upon the institution of proceedings in the probate court, at the time of trial there could have been no one with standing to sue on behalf of Zapata’s estate—no personal representative because none had yet been appointed, and no heir because an estate was pending in the probate court.  

The Probate Code does not explicitly define the moment at which an estate is “pending,” but section 160, titled “Powers of Surviving Spouse When No Administration is Pending,” provides that a surviving spouse has certain powers over community property “[w]hen no one has qualified as executor or administrator of the estate of a deceased spouse.”  
Tex. Prob. Code Ann.
 § 160(a).  Under this section, then, “when no administration is pending” is “when no one has qualified as executor or administrator of the estate.”  Other sections of the Probate Code that reference an estate that is “pending” contemplate that a personal representative has already been appointed.  
See, e.g.
, 
id.
 §§ 177, 338, 460.  Furthermore, the mere filing of a proceeding in the probate court does not necessarily cause an estate to be “pending.”  
See
 
In re John G. Kenedy Mem’l Found.
, No. 13-03-696-CV, 2004 WL 1335849, at *9 (Tex. App.—Corpus Christi June 16, 2004, orig. proceeding) (holding that a bill of review filed in probate court after the estate had been closed did not render the estate “pending”).  Because the probate court must determine that an administration is necessary before issuing letters of administration, 
see 
 
Tex. Prob. Code Ann.
 § 88(d),  instituting proceedings in the probate court by filing an application for letters of administration does not guarantee that a personal representative will be appointed.  If the court declines to appoint a personal representative, it is illogical to conclude that an estate was pending from the time of filing until the court’s refusal because this refusal indicates that no estate was necessary.  

Accordingly, we determine that an estate is not “pending” for purposes of applying the exception to the survival statute unless and until a probate court appoints a personal administrator of the estate.  Therefore, no estate was pending either at the time Mrs. Zapata filed the survival cause of action or at the time of trial.

B. 
Necessity of estate administration

Also under the general rule applied in 
Shepherd v. Ledford
, an heir does not have standing to sue on behalf of the estate if an estate administration is necessary.  
See
 962 S.W.2d at 31-32.  The probate code specifically states that this “necessity” exists if two or more debts exist against the estate or if it is desired to have the county court partition the estate among the distributees.  
See 
Tex. Prob. Code Ann
. § 178(b)
.
(footnote: 3)  The supreme court has held that this “necessity” does not exist when all the estate’s debts have been paid and the decedent’s family has agreed upon a manner of distributing the assets of the estate.  
See Shepherd
, 962 S.W.2d at 33-34. 
 

At trial, Zapata’s lawyer asked the trial court during its case-in-chief to “take judicial notice of the fact that there is no estate pending,” but he also informed the trial court that he had filed an application for letters of administration in the probate court that had not yet been issued.  Furthermore, at the hearing on Dr. Pratho’s motion for instructed verdict held after Mrs. Zapata rested her case, Zapata’s lawyer asked the court “to take judicial notice of the contents of the filings in the Tarrant County Probate Court.  We have asked that an estate be opened in the name of The Estate of Reynaldo Zapata, Deceased. . . .  So that’s pending.”

The only evidence regarding the lack of the necessity of an estate administration was Sabrina’s testimony that it was her understanding that all Zapata’s heirs had signed an agreement regarding the division of his estate and that his debts had been paid.  However, Mrs. Zapata’s application for grant of letters of administration averred otherwise:

A necessity exists for the administration of this estate . . . for the reason that the Applicant has pursued a survival cause of action for the Decedent’s medical costs, burial costs, and conscious pain and suffering prior to death in [this lawsuit].  That survival claim comprises funds or property due to the estate; it is necessary that the court issue letters of administration to recover those funds or property, and property [sic] distribute them to the estate. 

Therefore, at the same time Mrs. Zapata was asserting in the trial court that an estate administration was 
not 
necessary, she was claiming in the probate court that an estate administration 
was
 necessary.  
See 
Tex. Prob. Code Ann.
 § 82(h) (providing that an application for letters of administration shall state that a necessity exists for administration of the estate); 
id.
 § 178(b) (stating that a necessity for an estate exists “if or when it is desired to have the county court partition the estate among the distributees”). 

Nevertheless, the evidence showed that 
at the time of trial
, there was no need for an estate administration.  Sabrina’s testimony, uncontroverted by Dr. Pratho, established that Zapata’s debts had been settled and his heirs had agreed to a distribution of his estate.  
See Shepherd
, 962 S.W.2d at 33-34.  The necessity urged in Mrs. Zapata’s application in the probate court—to obtain and distribute the recovery to Zapata’s heirs—would not arise unless and until any recovery for the survival action was actually awarded.  Accordingly, we hold that at trial, Mrs. Zapata sufficiently pleaded and proved that no estate administration was pending and none was necessary.  

Contrary to Dr. Pratho’s assertions, Mrs. Zapata never abandoned or changed her position on her standing as an heir at the time of trial; at the JNOV hearing, her counsel reiterated that she satisfied the 
Shepherd v. Ledford
 exception at the time of trial and that the trial court had jurisdiction over the survival claim.
(footnote: 4)  Therefore, the JNOV was improper because 
the evidence before the trial court was sufficient to establish that Mrs. Zapata had standing to sue as an heir on behalf of Zapata’s estate.  
See 
Fort Bend County Drainage Dist. v. Sbrusch
, 818 S.W.2d 392, 394 (Tex. 1991) (stating that a court may render a JNOV if a directed verdict would have been proper); 
see also Prudential Ins. Co. v. Fin. Review Servs., Inc.
, 29 S.W.3d 74, 77 (Tex. 2000) (explaining that a directed verdict is proper only when 
the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent
)
.  

C. 
Amended Pleading and Relation-Back Doctrine

After trial but before the trial court rendered judgment on Zapata’s claims, the probate court opened an administration of Zapata’s estate, naming Sabrina as its personal administrator.  
With this estate administration pending, Sabrina then became the only party able to maintain a suit on behalf of Zapata’s estate.  
See Chandler
,
 
294 S.W.2d at 806.  
Mrs. Zapata argues that the trial court should have allowed her post-trial motion for leave to file her amended petition naming Sabrina as plaintiff for the survival claim of Zapata’s estate, even though the two-year statute of limitations had run on the survival claim, because the amended petition related back to the original petition filed within the limitations timeframe.

A trial court has no discretion to refuse a post-trial amendment of pleadings unless the opposing party presents evidence of surprise or prejudice or the amendment asserts a new cause of action or defense and the opposing party objects to the amendment.  
State Bar of Tex. v. Kilpatrick
, 874 S.W.2d 656, 658 (Tex.), 
cert. denied
, 512 U.S. 1236 (1994).
  
Dr. Pratho’s response to Mrs. Zapata’s motion for leave to file complained that Mrs. Zapata sought to plead factual allegations that were wholly opposite to the evidence presented at trial, creating “a wholly new, distinct and different proceeding with regards to the Estate of Reynaldo Zapata.”  
But Dr. Pratho’s response did not include evidence that the amendment would cause surprise or prejudice his defense, and this amendment did not seek to add a new claim to the lawsuit.  Therefore, the trial court had no discretion to refuse Mrs. Zapata’s request to file her amended petition.  
See id.

Even though the amended petition was filed outside the statute of limitations for the estate’s survival claim, it would have related back to the earlier petition because Mrs. Zapata pleaded and proved standing as an heir at the time of trial.  
See 
Tex. Civ. Prac. & Rem. Code Ann.
 § 16.068 (Vernon 1997);
(footnote: 5) cf. Lovato v. Austin Nursing Ctr., Inc
., 113 S.W.3d 45, 55 (Tex. App.—Austin 2003, pet. granted) (holding that post-limitations pleading amendment naming plaintiff as estate representative related back to original pleading because plaintiff had authority to sue as an heir at the time suit was filed); 
Lorentz
, 112 S.W.3d at 179 (holding that amended pleading did not relate back because plaintiff did not show that she possessed standing when she filed the original pleading).
(footnote: 6)  
With the operation of the relation-back doctrine, therefore, the post-verdict petition substituting the estate’s personal representative named the proper party for Zapata’s survival action and was timely filed.  Accordingly, we hold that the trial court erred in granting the JNOV and sustain 
Mrs. Zapata’s issue on appeal.

Having overruled Dr. Pratho’s issue, we affirm the portion of the trial court’s judgment attributing responsibility to Dr. Pratho
 for Zapata’s death.  Furthermore, having sustained Mrs. Zapata’s issue, we reverse the portion of the judgment that disregarded the jury’s findings on the estate’s survival cause of action and render judgment that past damages sustained by Zapata’s estate for pain and mental anguish suffered by Reynaldo Zapata before death amount to $406,000, the amount found by the jury.  We remand the cause to the trial court for computation of interest. 

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; WALKER and MCCOY, JJ.

WALKER, J. filed a concurring opinion.

DELIVERED
:  February 3, 2005

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-051-CV

SCOTT MASON PRATHO, M.D. APPELLANT AND

APPELLEE

V.

LUPE ZAPATA, INDIVIDUALLY APPELLEE AND

AND AS NEXT FRIEND FOR SABRINA APPELLANT

ZAPATA AND GREGORY ZAPATA, AND 

AS HEIR OR REPRESENTATIVE OF THE 

ESTATE OF REYNALDO ZAPATA, DECEASED

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

CONCURRING OPINION

------------

I.  Introduction

I concur with the majority’s disposition of Mrs. Lupe Zapata’s cross-point, but I write separately because I do not agree with the majority’s reasoning that whether or not Mrs. Zapata possessed standing pivots on the definition of “pending,” that is, whether the application for administration of Mr. Zapata’s estate achieved “pending” status during the present trial.

I would hold that the antiquated requirement that heirs suing for recovery of estate property plead and prove that no administration is pending and none is necessary should not apply to a statutory survival action.  I would further hold that Mrs. Zapata possessed standing to bring the survival action on behalf of Mr. Zapata’s estate when she initially filed suit under the probate code as an unqualified community survivor prosecuting a suit to recover debts due the community estate—Mr. Zapata’s medical expenses and funeral expenses—regardless of whether she pleaded or proved that no administration was pending and none was necessary.  I would hold that even if the requirement that heirs suing for recovery of estate property plead and prove that no administration is pending and none is necessary applies to statutory survival actions Mrs. Zapata satisfied that requirement.  And finally, I would also hold that as a matter of law the subsequent filing of an application for letters of administration more than four years after the decedent’s death solely for the purpose of recovering and distributing any funds awarded to the decedent’s estate cannot retroactively defeat an heir’s standing to bring a survival action.  For these reasons, I would sustain Mrs. Zapata’s cross-point and render judgment on the jury’s verdict concerning the estate’s survival damages.  

II.  Relevant Factual and Procedural Background

Mr. Zapata died intestate on May 27, 1997.  Mrs. Zapata filed an original petition on August 20, 1998 alleging that

Lupe Zapata brings this action in her individual capacity and on behalf of her children, Sabrina Zapata and Gregory Zapata, in their individual capacities as their Next Friend pursuant to Tex. Civ. Prac. & Rem. Code and § 71.004, and as Heir or Representative of the Estate of Reynaldo Zapata, Deceased, and on behalf of her children, Sabrina Zapata and Gregory Zapata, as heirs of the Estate of Reynaldo Zapata, Deceased, pursuant to Tex. Civ. Prac. & Rem. Code and § 72.021.  No estate has been opened and no probate is necessary as the plaintiffs are the sole heirs and all family members agree upon the division of the estate.  Further, all debts of the estate are provided for. 

Mrs. Zapata subsequently added the allegation that Mr. Zapata had no will. Mrs. Zapata’s live pleading when the trial commenced on June 11, 2002 contained these same allegations.

During their case-in-chief, however, Mrs. Zapata offered no evidence of these pleaded facts.  Consequently, Dr. Pratho moved for a directed verdict on the survival action based on lack of standing.  The trial court allowed Mrs. Zapata to reopen and to put on evidence outside the presence of the jury concerning standing.

Sabrina Zapata Nava testified that, during the four years following her father’s 1997 death, her mother and her family settled any debts her father owed at the time of his death.  She identified a “Family Agreement” and said that it was her understanding that she and all of the Zapata children, including adult children in Belton from her father’s first marriage, had signed the document agreeing to a division of her father’s estate.  Sabrina testified that her father did not own any real estate and that the only personal property he owned was his “personal effects” and whatever money was in his bank account at his death.

At the conclusion of this testimony, Mrs. Zapata’s counsel argued that this evidence established standing.  In response to questioning by the court, however, Mrs. Zapata’s counsel conceded that, “out of an abundance of caution,” he had filed an application for letters of administration before he successfully obtained the signatures of all of the family members on the family agreement.  The trial court denied Dr. Pratho’s motion for a directed verdict, indicating that he would submit the estate’s damages to the jury and re-address the standing issue if necessary on motion for judgment notwithstanding the verdict.

The jury awarded $406,000 damages to the estate for pain and mental anguish suffered by Mr. Zapata before his death as a result of the occurrence in question and for funeral and burial expenses.  Dr. Pratho filed a motion for judgment notwithstanding the verdict as to the estate damages.  Dr. Pratho’s motion asserted three grounds for judgment notwithstanding the verdict:  (1) Mrs. Zapata did not conclusively establish there were no debts owing to the estate; (2) although Sabrina Zapata testified the heirs of Reynaldo Zapata had agreed to the disposition of the estate, she also testified that she had no direct knowledge of the agreement and had not spoken with her stepbrothers or sisters; and (3) because Mrs. Zapata had, in fact, filed an application for letters of administration with the probate court, Mrs. Zapata did not have standing to bring the estate’s survival action as an heir. 

Mrs. Zapata then filed a motion for leave to file their seventh amended original petition.  That petition pleaded that Sabrina Zapata brought suit as the personal representative and administrator of the estate of Reynaldo Zapata. Mrs. Zapata attached a copy of the “Application to Appoint Independent Administrator and for Issuance of Letters of Administration” to her motion.  The application bears a file stamp of June 26, 2002 and alleges that Mr. Zapata died intestate on May 27, 1997, owned no real property, and possessed personal property in the form of a checking account and a savings account containing a combined balance of less than $20,000 at the time of his death.  The application lists the present survival action as personal property owned by Mr. Zapata and states that no other significant personal property exists.  The application pleads that

a necessity exists for the administration of this estate, more than four years after death for the reason that Applicant has pursued a survival cause of action for the Decedent’s medical costs, burial costs, and conscious pain and suffering prior to death in [this lawsuit].  That survival claim comprises funds or property due to the estate; it is necessary that the court issue letters of administration to recover those funds or property, and property [sic] distribute them to the estate.

Letters of administration were issued to Sabrina Zapata Nava on September 12, 2002.  The trial court denied Mrs. Zapata’s motion for leave to file her seventh amended original petition, granted Dr. Pratho’s motion for judgment notwithstanding the verdict as to the survival damages, and signed a final judgment on November 26, 2002.  This appeal and cross-appeal followed.

III.  Standing to Bring Statutory Survival Action

The issue of standing is a legal question that we review de novo.  
City of Arlington v. Scalf
, 117 S.W.3d 345, 347 (Tex. App.—Fort Worth 2003, pet. denied) (recognizing that because standing is a component of subject-matter jurisdiction, we review a trial court's determination of standing de novo) (citing 
Mayhew v. Town of Sunnyvale
, 964 S.W.2d 922, 928 (Tex. 1998), 
cert. denied
, 526 U.S. 1144 (1999)); 
El Paso Cmty. Partners v. B&G/Sunrise Joint Venture
, 24 S.W.3d 620, 624 (Tex. App.—Austin 2000, no pet.).  It is well-settled that a plaintiff must establish standing to bring a lawsuit.  
See Tex. Ass’n of Bus. v. Tex. Air Control Bd.
, 852 S.W.2d 440, 443-47 (Tex. 1993).  The test for standing requires that there be a real controversy between the parties that will actually be determined by the judicial declaration sought.  
See Nootsie, Ltd. v. Williamson County Appraisal Dist.
, 925 S.W.2d 659, 662 (Tex. 1996). 
To establish standing, one must show a justiciable interest by alleging actual or imminent threat of injury peculiar to one's circumstances and not suffered by the public generally.  
See Tex. Ass’n of Bus
., 852 S.W.2d at 444; 
Lorentz v. Dunn
, 112 S.W.3d 176, 178 (Tex. App.—Fort Worth 2003, pet. granted)
; 
see also, e.g., Singleton v. Donalson
, 117 S.W.3d 516, 519 (Tex. App.—Beaumont 2003, pet. denied) (holding that where life tenant has unqualified power to dispose of property during his lifetime, remainder beneficiaries have no justiciable interest in any property except that which has not been disposed of at life tenant's death).  A plaintiff has standing when it is personally aggrieved, regardless of whether she is acting with legal authority.  
Nootsie
, 925 S.W.2d at 661; 
see Pledger v. Schoellkopf
, 762 S.W.2d 145, 146 (Tex. 1988).  Standing is jurisdictional and cannot be waived.  
Tex. Ass'n of Bus.
, 852 S.W.2d at 445-46.

The Texas Survival Statute provides that a personal injury action survives to heirs, legal representatives, and the estate of the injured person.  
See
 
Tex. Civ. Prac. & Rem. Code Ann. 
§ 71.021(b) (Vernon 1997).  Thus, the plain language of the statute appears to confer standing to assert this statutory survival cause of action—the decedent’s personal injury action—upon “heirs, legal representatives, and the estate” of the decedent.  
Lorentz, 
112 S.W.3d at 179 (recognizing that “This statute [the survival statute] provides a party who would not otherwise have a justiciable claim with standing to sue.”); 
see also Garcia v. Caremark, Inc.
, 921 S.W.2d 417, 421 (Tex. App.—Corpus Christi 1996, no writ).  Likewise, the Texas Probate Code provides that when a person dies intestate all of his estate 
shall
 
vest immediately
 in his heirs.  
See
 
Tex. Prob. Code Ann. 
§ 37 (Vernon  2003).  When a person dies intestate leaving a surviving spouse, the spouse is an heir.  
Id.
 § 38.  Thus, again, the plain language of these statutory provisions would, upon the death of the intestate decedent, seem to immediately vest in his heirs at law, including a surviving spouse, with ownership of, and accordingly standing to assert, the deceased’s personal injury action via a survival action.  
Accord
 
Nootsie
, 925 S.W.2d at 661 (holding that “[a] plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority”).  And finally, the probate code makes a specific exception to the four-year time period for obtaining letters of administration when administration is subsequently necessary in order to receive funds owed to the estate.  
Tex. Prob. Code Ann.
 
§ 
74.  The probate code thus expressly recognizes that an administration may become necessary not to pay debts, but simply to receive and distribute monies owed to the estate, such as monies paid pursuant to a judgment on a jury verdict for an estate based on a survival action brought by heirs at law.  
Id.

Juxtaposing general principles of standing with the statutory scheme concerning survival actions, it would appear that, to bring a statutory survival action on behalf of an estate, a person must prove only that he or she possesses some justiciable interest in the survival action, that is, that some portion of the action belongs to them via a will or by the laws of descent and distribution.  
See
 
Tex. Civ. Prac. & Rem. Code Ann. 
§ 71.021(b); 
Nootsie
, 925 S.W.2d at 661; 
accord
 
Lorentz
, 112 S.W.3d at 178-79 (holding person who was not an heir and had not been appointed personal representative of the estate when she filed survival action had no standing under statute to bring survival suit); 
Ford Motor Co. v. Cammack, 
999 S.W.2d 1, 4-5 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (holding that parents of adult daughter did not establish standing when they failed to prove any justiciable interest in her estate’s survival suit; they failed to prove whether she had died intestate or testate, they failed to obtain declaration of heirship from probate court, and no administration had occurred); 
Pluet v. Frasier
, 355 F.3d 381, 384-86 (5th Cir. 2004) (holding mother of decedent’s alleged child did not establish standing to sue when she failed to prove any justiciable interest in estate’s survival claim; paternity tests revealed child was not decedent’s and mother did not prove she was an heir or was appointed any type of representative of estate when suit was filed).  A 
plaintiff lacks standing to bring a survival action if he or she fails to prove anything more than that he or she is a relative or friend of the deceased; instead, the plaintiff must prove that he or she possessed some justiciable interest in the survival action, that is, that he or she is personally aggrieved.  
Cammack, 
999 S.W.2d at 4-5; 
Pluet
, 355 F.3d at 384-86.  A random third party, who is not an heir of the deceased or the personal representative of the estate of the deceased, possesses no standing to bring a survival action on behalf of the deceased’s estate.  
See
 
Lorentz
, 112 S.W.3d at 179; 
Pluet
, 355 F.3d at 384-86.

IV.  Requirement that Heirs Suing For Recovery of Estate Property

Plead and Prove that No Administration is Pending and None is Necessary

Early in Texas’s history, the rule of law was established that “the necessity for administration must be presumed in every case, unless facts be shown that make it an exception.”  
Webster v. Willis
, 56 Tex. 468, 474 (1882); 
see also Davis v. Cayton
, 214 S.W.2d 801, 804 (Tex. Civ. App.—Amarillo 1948, no writ).  Because of this presumption, the general rule is that only an administrator or executor may sue to recover estate property or be sued on estate debts.  
See, e.g.
, 
Richardson v. Vaughan
, 23 S.W. 640, 640-41 (Tex. 1893) (recognizing general rule that only administrator may sue); 
Lacy v. Williams
, 8 Tex. 182, 187 (1852) (same).  Heirs are entitled to bring suit in their own names to recover estate property only if they defeat the presumption that a necessity exists for administration, usually by alleging and proving that no administration is pending and none is necessary.  
Davis
, 214 S.W.2d at 804 (recognizing that because of presumption appellant was charged with burden of proving no necessity for administration); 
see also Laas v. Seidel, 
67 S.W. 1015, 1015 (Tex. 1902) (recognizing heir or legatee cannot sue in his own name to recover estate property unless he pleads and proves no administration is pending and none is necessary);
 
Richardson
, 23 S.W. at 640-41 (same)
;
 
Youngs v. Youngs
, 26 S.W.2d 191, 194 (Tex. Comm’n App. 1930, judgm’t adopted) (same)
; 
accord
 
McCampbell v. Henderson
, 50 Tex. 601, 611 (1879) (permitting creditor’s suit directly against heirs where no administration was pending, none was necessary, and heirs were in possession of ancestor’s property). 

The rationale underlying the requirement that heirs bringing suit in their own name to recover estate property allege and prove that there is no administration upon the estate and none is necessary was explained in 
Giddings v. Steele
, 28 Tex. 732, 749 (1866).  There, the supreme court explained that requiring the administrator to bring suit (1) prevented simultaneous suits by the heirs and the administrator both claiming the right to the same property and (2) prevented the heirs from essentially effecting a partition of the estate by recovering monies in their own name and refusing to turn them over to the administrator or to creditors for satisfaction of the debts of the estate.  
Giddings, 
28 Tex. at 749; 
see also Lacy
, 8 Tex. at 187.  Heirs could not sue in their own name in district court to recover estate property and thereby effectuate a partition of an estate because a district court errs by assuming jurisdiction to decree a partition of an estate among heirs  before any necessary administration in the probate court is concluded.  
See Elliott v. Elliott
, 208 S.W.2d 709, 712-13 (Tex. Civ. App.—Fort Worth 1948, writ ref’d n.r.e.).

From an early date, however, courts recognized that the surviving spouse, as an unqualified community survivor, may prosecute a suit to recover a debt due the community estate without the necessity of pleading or proving that no administration was pending and none was necessary.  
See San Antonio & A. P. Ry. Co. v. Evans
, 198 S.W. 674, 675 (Tex. Civ. App.—Texarkana 1917, no writ); 
Mo., K. & T. Ry. Co. of Tex. v. Groseclose
, 134 S.W. 736, 739 (Tex. Civ. App. 1911, writ ref’d); 
W. Union Tel. Co. v. Kerr
, 4 Tex. Civ. App. 280, 283, 283 S.W. 564, 565 (Tex. Civ. App. 1893, no writ).  
The surviving spouse, even in the absence of having qualified under the statute, is given broad powers to possess, control, and dispose of the community property in settlement of community affairs.  
See
 
Tex. Prob. Code Ann.
 § 160(a); 
S. Underwriters v. Lewis
, 150 S.W.2d 162, 167 (Tex. Civ. App.—Texarkana 1941, no writ); 
see also Coleman v. Winn-Coleman
,
 Inc.
, 110 S.W.3d 104, 110 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding surviving spouse has power to sue to collect claims due the community estate without qualifying as community administrator).  In cases where the question of necessity for administration has been raised by a debtor being pressed for payment of a debt due the community estate, it is uniformly held that the unqualified community survivor may prosecute the suit, and in doing so that she exercises powers similar to that of a surviving partner.  
S. Underwriters
, 150 S.W.2d at 167.

Other exceptions also exist to the general rule that only an administrator or executor may bring suit to recover estate property.  
See Walker v. Abercrombie
, 61 Tex. 69, 71 (1884).  While it is ordinarily true that the legal representative of a deceased person’s estate is the proper person to maintain a suit to recover property of or a debt due to an estate, there are well-settled exceptions to this rule even in cases where heirs or persons claiming rights derived from and through the deceased are the persons suing.  
Id.  
Heirs are permitted to sue in their own names to recover estate property under certain exceptions to the general rule.  
Accord Shepherd v. Ledford, 
962 S.W.2d 28, 31-32 (Tex. 1998) (recognizing general rule applies only when heirs bring suit within four-year period for administration); 
Frazier v Wynn, 
472 S.W.2d 750, 752 (Tex. 1971) (recognizing general rule applies only when heirs attempt to sue in their own name “during the four-year period allowed by law for instituting administration proceedings”); 
Walker
, 61 Tex. at 73 (recognizing exception to general rule when suit was required to prevent running of limitations); 
Rogers v. Kennard
, 54 Tex. 30, 37 (1880)
 
(recognizing exception to general rule when administrator was directly antagonistic to heir-plaintiffs so that he could not have instituted suit in their behalf); 
Giddings
, 28 Tex. at 748-49 (recognizing exception to general rule when administration had been closed); 
Youngs
, 26 S.W.2d at 194-95 (recognizing general rule applies only when heirs attempt to sue in their own names “within the four-year period allowed by law for an administration”); 
Rackley v. May
, 478 S.W.2d 219, 225 (Tex. Civ. App.—Houston [1st Dist.] 1972, writ ref’d n.r.e.) (recognizing exception to general rule when administration period had passed); 
Izard v. Townsend
, 208 S.W.2d 666, 667-68 (Tex. Civ. App.—Galveston 1948, no writ) (recognizing exception to general rule when the interest of estate required immediate action and there was no representative qualified to act); 
Tunnell v. Moore
, 53 S.W.2d 324, 326 (Tex. Civ. App.—Dallas 1932), 
aff’d
, 86 S.W.2d 207 (Tex. 1935) (recognizing exception to general rule when statutory time for administration had expired)
.  The rule—that the legal representative of a deceased person’s estate is the proper person to maintain a suit to recover property of or a debt due to an estate—is not an unbending one and has its foundation in the necessity for giving protection to creditors of a deceased person, which in most cases makes it necessary to place the estate and its control in the hands of a legal representative, freed from interference by heirs, legatees, or devisees, while such representative is in the lawful discharge of the funds. 
 Walker, 
61 Tex. at 71.  
“This rule does not exist for the benefit of debtors to the estate who are indisposed to pay what they justly owe to any one.” 
 Id.

In 1893, in 
Richardson v. Vaughan, 
the Texas Supreme Court expressly recognized the questionable logic in the prohibition against heirs suing in their own names to recover estate assets but justified its continued application on the ground that it had been followed so long that “it is too late to depart from it.”  23 S.W. at 641.

Since our statute casts the legal title of property belonging to the estate of deceased persons directly upon the heirs . . . , we think it might properly have been held that, after the lapse of a reasonable time without administration upon the estate, they should have the right to sue for the recovery of any chose in action or other property which had descended to them.  But from an early day a different doctrine has been announced in this court, and it is now too late to depart from it.  As a general rule, the holding has been that the heirs cannot sue without alleging and proving that there is no administration upon the estate, and that there is no necessity for one.  

Richardson
, 23 S.W. at 640-41.  Despite the 
Richardson
 Court’s criticism in 1893, courts nonetheless continued to apply the general rule that only an administrator can sue to recover estate property and to impose the corollary requirement that an heir bringing suit in his own name to recover estate property must allege and prove that there is no administration upon the estate and that none is necessary.  
See, e.g., Youngs
, 26 S.W.2d at 194-95 (decided in 1930). 

In 1998 in 
Shepherd v. Ledford
, the Texas Supreme Court discussed the general rule and the corollary requirement—that an heir may not bring suit in his own name to recover estate property unless he pleads and proves no administration is pending and none is necessary—in the context of an heir’s standing to bring a survival action.  962 S.W.2d at 31.
(footnote: 7)  Other than 
Shepherd
, the supreme court has not applied the rule that heirs cannot sue without alleging and proving that there is no administration upon the estate and that none is necessary to an heir’s standing to bring a statutory survival action.  And even in 
Shepherd
, the supreme court ultimately held that Mrs. Ledford possessed standing to sue on behalf of Mr. Ledford’s estate.  
Id.
 at 34. Thus, the supreme court has never applied the general rule to defeat an heir’s standing to bring a survival action.

Indeed, it is questionable whether the general rule that an heir may not bring suit in his own name to recover estate property without pleading and proving that no administration is pending and none is necessary is applicable to a statutory survival action.   
Accord Loper v. Meshaw Lumber Co.
, 104 S.W.2d 597, 603 (Tex. Civ. App.—Eastland 1937, writ dism’d) (holding that, because heir’s suit was statutory trespass to try title suit, pleadings containing  allegations in accordance with statute were sufficient and pleading that no administration was pending or necessary was not required).  Additionally, the law no longer presumes the necessity for administration in every case.  
See
 
Tex. Prob. Code Ann.
 § 178(b) (“No administration of any estate shall be granted unless there exits a necessity therefor[e].”); 
Pitner v. United States
, 388 F.2d 651, 656 n.6 (5th Cir. 1967).  If an administration is not necessary to satisfy the purposes of collecting the assets, paying debts and claims, and distributing the remaining property, certainly the law should not demand it merely as an empty form.  
Pitner
, 388 F.2d at 656 n.6. 
(quoting Basye, 
Streamlining Administration Under the New Texas Probate Code
, 35 
Texas L. Rev. 
165-66 (1956)).  The policy concerns underlying the general rule that only the administrator or executor of a decedent’s estate may bring suit to recover the decedent’s property likewise do not seem applicable to a statutory survival action.  
See, e.g., Walker
, 61 Tex. at 71-72 (recognizing general rule is for benefit of creditors, not debtors).

Despite the questionable logic of applying the general rule that heirs cannot sue in their own names to recover estate property, based on the supreme court’s discussion in 
Shepherd
, 
Texas courts began applying the general rule that heirs must plead and prove no administration is pending and none is necessary to establish standing to bring a statutory survival suit in their own name on behalf of the estate.  
See Lovato v. Austin Nursing Ctr., Inc.
, 113 S.W.3d 45, 52-55 (Tex. App.—Austin 2003, pet. granted); 
Stewart v. Hardie, 
978 S.W.2d 203, 207 (Tex. App.—Fort Worth 1998, pet. denied); 
see also Moore v. Johnson
, 143 S.W.3d 339, 343-44 (Tex. App.—Dallas 2004, no pet.); 
Stempson v. City of Houston
, No. 01-02-000280-CV, 2003 WL 139603, at *2-3 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (mem. op.).  The problem with requiring an heir to prove standing by pleading when the suit is filed and 
proving at the time of trial
 that no administration is pending and none is necessary is that whether an administration is necessary is not a static fact that may be proved once and for all.  A survival action must be brought within two years of the decedent’s death, but creditors of the decedent’s estate may initiate an administration at any time within four years of the intestate’s death—leaving a two-year gap when the administration facts pleaded by an heir instituting a survival action are subject to change.  
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 16.003(b) (Vernon 2002) (setting forth two-year statute of limitations); 
Tex. Prob. Code Ann.
 § 74 (setting forth four-year period for creditor to initiate administration).  For example, no administration is necessary if the estate has fewer than two debts.  But what happens if the heirs allege standing to sue based on the estate having fewer than two debts, limitations runs on the survival action, and a creditor—whom the heirs at law do not even know exists—files an application for administration?  Does this subsequent fact eliminate an heir’s initial standing to bring suit on behalf of the estate?
(footnote: 8)  No administration is necessary when a family settlement agreement exists.  But what happens if the heirs allege standing to sue based on a family settlement agreement, limitations runs on the survival action, and one heir subsequently decides not to accept the family settlement agreement?  Does this subsequent fact, which gives rise to the necessity for administration of the estate, defeat an heir’s initial standing to bring suit on behalf of the estate?  What happens if after a final judgment awarding survival damages to an estate an administration becomes necessary?  Is the judgment subject to collateral attack as void because the heir who brought the suit did not have standing?  Or, applying the majority’s logic, what happens if a probate court issues letters of administration during the trial of a survival action, causing an administration to become “pending”?  Does the pendency of such an administration during one day of trial retroactively defeat the heir’s heretofore achieved standing?

The problems in this case developed as a result of just such evolving facts.

V.  Application of Law to the Present Facts

A.  Standing to Assert Survival Action

Mrs. Zapata pleaded and proved that she possessed a justiciable interest in the survival action that she brought on behalf of her husband’s estate.  She pleaded that Mr. Zapata died intestate and that she was one of his heirs.  
See
 
Tex. Prob. Code Ann.
 § 38 (surviving spouse is an heir when husband dies intestate).  Mr. Zapata’s property, including this medical negligence action, vested immediately in his heirs, including Mrs. Zapata.  
See id.  
As an heir, Mrs. Zapata was statutorily authorized to bring suit on behalf of Mr. Zapata’s estate.  
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 71.021.  By alleging that she was an heir in whom ownership of a portion of Mr. Zapata’s medical negligence claim had vested and asserting Mr. Zapata’s negligence claims, Mrs. Zapata alleged an actual injury peculiar to her circumstances and not suffered by the public generally.  
See Tex. Ass’n of Bus
., 852 S.W.2d at 443.  Mrs. Zapata had standing to file Mr. Zapata’s statutory survival action because a portion of that action passed to her as an heir and, accordingly, she was personally aggrieved, regardless of whether she was acting with legal authority.  
Nootsie
, 925 S.W.2d at 659 (“A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority.”). 

B.  General Rule Does Not Apply to Suit to Recover

a Debt Due the Community Estate—Funeral Expenses

A surviving spouse, as an unqualified community survivor, may prosecute a suit to recover a debt due the community estate without the necessity of pleading or proving that no administration was pending and none was necessary.  
Tex. Prob. Code Ann.
 § 160(a); 
Coleman
, 110 S.W.3d at 110; 
S. Underwriters, 
150 S.W.2d at 167;  
San Antonio & A. P. Ry. Co., 
198 S.W. at 675; 
Mo., K. & T. Ry. Co. of Tex., 
134 S.W. at 739; 
W. Union Tel. Co., 
23 S.W. at 565.  Funeral expenses of a deceased spouse in a reasonable amount are chargeable to the entire community estate.  
Landers v. B. F. Goodrich Co.
, 369 S.W.2d 33, 35 (Tex. 1963) (“reasonable cost of a suitable funeral constitutes a charge against the estate”);  
Goggans v. Simmons
, 319 S.W.2d 442, 446 (Tex. Civ. App.—Fort Worth 1958, writ ref’d n.r.e.) (same).  Nonetheless, reasonable funeral expenses are recoverable damages in a survival suit because they must be incurred as a result of the injuries.  
Landers
, 369 S.W.2d at 35; 
see also Russell v. Ingersoll-Rand Co.
, 841 S.W.2d 343, 345 (Tex. 1992) (same).

The Zapata’s live trial pleading sought recovery for Mr. Zapata’s physical pain and mental anguish and asserted that “[t]he estate has also incurred burial expenses and medical expenses for which the estate makes claim.”  The estate’s damages were submitted in broad form, asking the jury what sum of money would fairly and reasonably compensate Mr. Zapata’s estate for (a) pain and mental anguish and (b) funeral and burial expenses.  The jury answered $406,000.

The law is clear that Mrs. Zapata, as the surviving spouse and  unqualified community survivor, possessed the power and authority to prosecute the survival suit to recover the funeral and burial expenses due the community estate without the necessity of pleading or proving that no administration was pending and none was necessary.  
Tex. Prob. Code Ann.
 § 160(a); 
Coleman
, 110 S.W.3d at 110; 
S. Underwriters, 
150 S.W.2d at 167;  
San Antonio & A. P. Ry. Co., 
198 S.W. at 675; 
Mo., K. & T. Ry. Co., 
134 S.W. at 739; 
W. Union Tel. Co., 
23 S.W. at 565.  Thus, at least as to the funeral and burial element of damages, she possessed standing to bring the instant survival suit.
(footnote: 9)
 C.  Pleading that No Administration was Necessary

As discussed above, it would appear that the requirement that an heir may not sue to recover estate property unless the heir pleads that no administration is pending and none is necessary is not applicable to a determination of whether an heir possesses standing to bring a statutory survival action.  
Accord Loper
, 104 S.W.2d at 603.  But, nonetheless, if this pleading requirement applies to determine standing in survival actions, the record demonstrates that Mrs. Zapata satisfied the requirement.  She pleaded that she brought the suit as heir or representative of the estate of Mr. Zapata and on behalf of their children as heirs of Mr. Zapata’s estate.  She pleaded that Mr. Zapata died intestate and that no administration was pending or necessary.  These facts were true at the time each of her first six amended petitions were filed.  Thus, even assuming the requirement that to bring suit an heir must plead that no administration was pending and none was necessary, Mrs. Zapata sufficiently 
pleaded
 standing to assert the survival action.

D.  Proof Regarding Necessity for Administration:

Time for Administration By Creditors Had Expired;

Family Settlement Agreement

During trial, on July 3, 2002, the trial court allowed Mrs. Zapata to reopen her case in chief and to offer evidence (1) that Mr. Zapata’s heirs had entered into a family settlement agreement, (2) that during the four years after Mr. Zapata’s intestate death on May 27, 1997, any debts owed by him at the time of his death had been settled, (3) that Mr. Zapata did not own any real estate, and (4) that the only personal property Mr. Zapata owned was his “personal effects” and less than $20,000 in his bank accounts at his death.
(footnote: 10) This proof establishes that no administration was necessary.

The proof establishes that no administration was necessary because over five years had elapsed since the death of Mr. Zapata and the time within which a creditor could file an application for administration had expired.  
See
 
Tex. Prob. Code Ann.
 § 74 (providing that all applications for letters of administration must be filed within four years after the death of the intestate).  No creditor of Mr. Zapata’s had felt sufficient interest in his estate to cause an administration to be opened.  
Accord Walker
, 61 Tex. at 73.  The primary purpose of an administration is for the protection of creditors.  
See, e.g., S. Underwriters, 
150 S.W.2d at 168.  Because the time for creditors to seek an administration had expired, no administration was necessary, and Mrs. Zapata was authorized to continue to prosecute the survival action.  
Accord Shepherd, 
962 S.W.2d at 31-32 (phrasing general rule as prohibiting heirs from suing “during the four-year period” for an administration without alleging no administration is pending and none is necessary); 
Frazier, 
472 S.W.2d at 752 (same); 
Rackley
, 478 S.W.2d at 225 (same).

The proof also establishes that no administration was necessary because Mr. Zapata’s heirs had entered into a family settlement agreement.  Proof of such an agreement establishes that no administration is necessary.  
See 
Tex. Prob. Code Ann.
 § 37; 
Shepherd
, 962 S.W.2d at 34 (citing 
In re Estate of Hodges
, 725 S.W.2d 265, 267 (Tex. App.—Amarillo 1986, writ ref’d n.r.e.)).  The record reflects that Mrs. Zapata proved no administration was necessary for three alternative reasons:  (1) the debts of the estate had been settled; (2) a family agreement existed; and (3) the time for administration for the benefit of creditors had expired.

E.  An Administration Was Attained
  

On June 26, 2002, more than four years after Mr. Zapata died intestate on May 27, 1997, Mrs. Zapata filed an application for letters of administration alleging that the possibility of a recovery in the survival action necessitated an administration.  On September 12, 2002, after the jury returned its verdict for Mrs. Zapata and during the trial court’s plenary power, the probate court issued letters of administration to Sabrina Zapata Nava.  Mrs. Zapata filed a motion requesting leave to file a seventh amended original petition pleading that Sabrina Zapata Nava brought the survival suit as administrator of the estate of Mr. Zapata.  The trial court denied Mrs. Zapata’s motion for leave.  For the reasons discussed in the majority opinion, the trial court erred by denying Mrs. Zapata leave to file her seventh amended original petition.  
See also 
Tex. R. Civ. P.
 63, 66; 
Greenhalgh v. Serv. Lloyds Ins. Co.
, 787 S.W.2d 938, 939-40 (Tex. 1990) (holding trial court possesses no discretion to deny post-verdict amendment unless party opposing amendment presents evidence of surprise or prejudice or amendment asserts new cause of action or defense).

Once Sabrina obtained letters of administration, she possessed standing as administrator to pursue the survival action on behalf of her father’s estate.  
See, e.g., Shepherd
,  962 S.W.2d at 31 (recognizing personal representatives of estate have standing to prosecute survival suit).  As discussed in subsections A, B, C, and D above, Mrs. Zapata possessed standing to initially file the survival action and when Sabrina obtained letters of administration, she also possessed standing to step in, via an amended pleading, and conclude the survival action.  
Accord
 
Tex. R. Civ. P.
 65.  Thus, the survival action was at all times asserted on behalf of Mr. Zapata’s estate by a person with standing.

F.  Dr. Pratho’s Evidentiary Challenges

Dr. Pratho claims that Mrs. Zapata failed to “conclusively establish that there were no debts owing to the estate,” that is, that an administration was not necessary.  Dr. Pratho points to two alleged debts—Mr. Zapata’s medical expenses and funeral expenses—which Sabrina could not conclusively testify had been paid.
(footnote: 11)  The Texarkana court of appeals in 
Southern Underwriters
 rejected the exact claims made by Dr. Pratho here.  150 S.W.2d at 167-68.

Mr. Lewis sued Southern Underwriters and others for worker’s compensation benefits.  
Id.
  Mr. Lewis died before trial.  
Id.
 at 164.  During trial the defendants moved for a directed verdict and, after trial, for judgment notwithstanding the verdict on the ground that the plaintiffs, the surviving spouse and child of Mr. Lewis, failed to show that there was no necessity for administration of Mr. Lewis’s estate.  
Id. 
at 167.  The defendants argued that without showing such facts the plaintiffs had no right to prosecute the suit. 
 Id.
  The testimony showed that the property owned by Mr. Lewis at the time of his death consisted of $723.69 due him by defendants on his compensation claim and a small "shack" worth approximately $5; he owed $75 borrowed money, some doctor bills, and the expenses of his last illness and burial, which were not shown to have been paid.  
Id.
  These facts showed necessity for administration in the sense that they would authorize the granting of letters of administration.  
Id.
  But nonetheless, the court held that Mrs. Lewis was not required to obtain letters of administration or to plead or prove that no administration of Mr. Lewis’s estate was pending or necessary.  
S. Underwriters, 
150 S.W.2d at 167.

The court of appeals recognized that when Mr. Lewis died Mrs. Lewis became entitled to one-half the community property and the minor child to the other one-half, subject to the debts against the estate.  
Id.
  Mrs. Lewis, having an interest in Mr. Lewis’s cause of action, was entitled to maintain the suit, and it was not necessary to allege there was no administration on the estate.  The court of appeals reiterated that a primary purpose of administration is the protection of creditors of the estate.  
Id.  
In cases where the question of necessity for administration is raised by a debtor being pressed for payment of a debt due the community estate, it is uniformly held that the unqualified community survivor may prosecute the suit, and that in doing so she exercises powers similar to that of a surviving partner.  
Id.

Here, Mr. Zapata’s funeral expenses constitute a debt of the community estate.  
See
 
Landers
, 369 S.W.2d at 35.  Likewise, Mr. Zapata’s medical expenses constitute a debt of the community estate.  
See, e.g., Moreno v. Alejandro, 
777 S.W.2d 735, 737 (Tex. App.—San Antonio 1989, writ denied) (
citing Graham v. Franco
, 488 S.W.2d 390, 396 (Tex. 1972) (holding “recovery for medical expenses incurred during marriage is community property”).  While the possible existence of these two debts may authorize an administration, they do not compel Mrs. Zapata to obtain one before suing to recover these debts allegedly due the community estate.  Mrs. Zapata, Mr. Zapata’s surviving spouse, as an unqualified community survivor, possessed authority to prosecute a suit to recover these debts due the community estate without the necessity of pleading or proving that no administration was pending and none was necessary.  
Tex. Prob. Code Ann.
 § 160(a); 
Coleman
, 110 S.W.3d at 110; 
S. Underwriters, 
150 S.W.2d at 167;  
San Antonio & A. P. Ry. Co., 
198 S.W. at 675; 
Mo., K. & T. Ry. Co., 
134 S.W. at 739; 
W. Union Tel. Co., 
23 S.W. at 565.

Next, Dr. Pratho claims that although Sabrina Zapata Nava testified that the heirs of Reynaldo Zapata had agreed to the disposition of the estate, she also testified that she had no direct knowledge of the agreement and had not spoken with her stepbrothers or sisters.
(footnote: 12)  Sabrina’s testimony reflects that her lawyers spoke with Mr. Zapata’s heirs.  No evidence exists in the record that any heir did not sign the agreement or that any heir repudiated the agreement.  I cannot agree that Sabrina’s testimony that she personally did not speak with her stepbrothers or sisters has any consequence to the validity of the family settlement agreement.  That agreement established that no administration was necessary.  
See Shepherd
, 962 S.W.2d at 33-34 (holding “because of the family agreement, no formal administration was necessary”).

Finally, Dr. Pratho claimed that Mrs. Zapata did not have standing to initially bring the estate’s survival action because Mrs. Zapata subsequently filed an application for letters of administration.  I cannot agree.  Mrs. Zapata pleaded standing to bring a survival suit on behalf of Mr. Zapata’s estate on the grounds that no administration was necessary.  Four years passed.  No administration was necessary.  Nonetheless, “out of an abundance of caution,” the Zapatas instituted an administration solely for the purpose of receiving and distributing any funds recovered in this survival action.  Administration for the purpose of receiving and distributing any funds awarded to Mr. Zapata’s estate in the survival action cannot defeat Mrs. Zapata’s standing to bring that same survival action.  The argument is circular.  Dr. Pratho argues that Mrs. Zapata lacked standing because an administration was required.  Then, when Mrs. Zapata obtained letters of administration, he argues that the obtaining of letters of administration retroactively defeated Mrs. Zapata’s standing.  For these reasons, I concur with the majority’s holding that Dr. Pratho was not entitled to judgment notwithstanding the jury’s verdict on the estate damages.

VI.  Conclusion

The requirement that heirs must plead and prove no administration is pending and none is necessary should not be applied to statutory survival actions.  Assuming the satisfaction of this requirement is necessary to attain standing to bring a statutory survival action, Mrs. Zapata pleaded and proved that no administration was pending and none was necessary.  The Zapatas also proved up a family settlement agreement, further establishing that no administration was necessary.  They were, in any event, excused from proving at trial that no administration was necessary because the trial occurred more than four years after Mr. Zapata’s death and the four-year time period for creditors to institute an administration had expired, bringing them within an exception to the requirement that heirs plead and prove that no administration is pending and none is necessary.  And finally, Mrs. Zapata possessed standing as a surviving spouse and unqualified community administrator to bring the survival suit to recover medical and funeral expenses due the community estate.  Nonetheless, out of an abundance of caution, the Zapatas also filed an application for letters of administration more than four years after Mr. Zapata’s death for the sole purpose of receiving and distributing any funds awarded to Mr. Zapata’s estate in the survival suit.  The Zapatas established standing under at least five theories.  No prohibition exists preventing litigants from asserting different, or even alternative, theories of standing at different points in a lawsuit so long as the suit is always prosecuted by someone with standing.  For all of these reasons, not simply based on the majority’s definition of “pending,” I would sustain Mrs. Zapata’s cross-point and render judgment for Mr. Zapata’s estate on the damages awarded to the estate by the jury.

SUE WALKER

JUSTICE

DELIVERED:  
February 3, 2005

FOOTNOTES
1:
Zapata had two children with Lupe Zapata (Sabrina Zapata Nava and Gregory Zapata) as well as four other children from a previous marriage.

2:
Zapata also sued the doctors’ professional associations, but due to a settlement and a directed verdict, these claims were not submitted to the jury. 

3:
These are not the only situations in which necessity for an estate administration may arise; “mention of these two instances of necessity for administration shall not prevent the court from finding other instances of necessity upon proof before it.”  
Id.

4:
While arguing at this hearing, Mrs. Zapata’s counsel stated that “[i]t became necessary to open an estate because we were unable to secure a binding agreement with other members of the family.”  Dr. Pratho contends that this statement is evidence that the family did not agree on the distribution of Zapata’s estate.  But counsel also explained near the end of trial that all family members had signed the agreement by the time Sabrina testified to the standing issue at trial.  Regardless, none of these statements were made under oath, so they do not constitute evidence before the court.  
See Banda v. Garcia
, 955 S.W.2d 270, 272 (Tex. 1997).

5:
“If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.”  
Id.

6:
In 
Lorentz
, we held that the plaintiff’s amended pleading did not relate back because the plaintiff, who was not named the personal representative until twelve days after filing suit on behalf of the estate, did not have standing at the time suit was filed, either as an heir or as a personal representative of the estate.  Because the petition was filed by a plaintiff who lacked standing, it was a nullity; consequently, any amended petition could not relate back to it.  
Id.
  Here, Mrs. Zapata 
did 
have standing to sue on behalf of the estate as an heir at the time she filed her original petition, so the rule of 
Lorentz
 does not apply.

7:
As authority for the proposition that heirs cannot bring a survival action on behalf of the decedent’s estate unless they allege and prove that no administration is pending and no necessity for an administration exists, the Texas Supreme Court in 
Shepherd
 cited only 
Frazier
, 472 S.W.2d 750, 752 (Tex. 1971).  
962 S.W.2d at 31.  
Frazier
 did not involve a statutory survival action.  As authority for the proposition that heirs cannot bring a survival action on behalf of the decedent’s estate unless they allege and prove that no administration is pending and no necessity for an administration exists, the supreme court in 
Frazier
 cited only 
Youngs v. Youngs
, 26 S.W. 191, 194 (Tex. Comm’n App. 1930, judgm’t adopted).  472 S.W.2d at 752
.  Youngs 
did not involve a statutory survival action.  As authority for the proposition that heirs cannot bring a survival action on behalf of the decedent’s estate unless they allege and prove that no administration is pending and no necessity for an administration exists 
Youngs
 
cited 
Laas, 
67 S.W. at 1015;
 Richardson
, 23 S.W. at 640-41; 
Giddings
, 28 Tex. at 732;
 Green v. Rugely
, 23 Tex. 539, 542 (1859); 
Webster
, 56 Tex. at 468; and 
Rogers
, 54 Tex. at 37, none of which involved a statutory survival action.

8:
At least one litigant has argued that, because a probate court cannot issue letters of administration without a specific finding that an administration is necessary, the issuance of letters of administration at any time during the pendency of the survival action retroactively collaterally estops an heir from contending that at the time she filed the survival action on behalf of the estate no necessity for administration exists.  
See
 
Petitioner’s Brief on the Merits, 
Austin Nursing Ctr., Inc. v. Lovato
, No. 03-0659, 2004 WL 554763, at *4-5 (filed with Supreme Court of Texas). 

9:
Pain and mental anguish damages are separate property.  
See
 
Tex. Fam. Code Ann.
 § 3.002 (Vernon 1998).

10:
Mrs. Zapata’s counsel conceded that a few weeks earlier, during the trial, he had filed an application for letters of administration in probate court because he had not at that time obtained all heirs’ signatures on the family settlement agreement.

11:
Sabrina testified that the funeral expenses had been paid and that she was “pretty sure” the medical expenses had been paid because her father had insurance.

12:
Specifically, Sabrina testified,

Q.  Were you a part of the Zapata Family Trust, meaning, did you speak with, in this case, Jose Hernando Zapata, directly regarding this trust or agreement?

A.  My lawyers did.

Q.  No, ma’am.  I’m asking have you.

A.  Have I spoke with him?  No, I have not spoke with him.  

Q.  Have you directly spoken with Corina Zapata Mia?

A.  I haven’t spoken with any of them [her stepbrothers and sisters].

COMMENTS AND ANNOTATIONS
Comment 1:
Majority by Justice McCoy

Concurrence by Justice Walker